THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CALVIN CHATMAN, Defendant-Appellant.

First District (5th Division)    No. 79-730

Opinion filed December 18, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Michele A. Grimaldi, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant was acquitted of attempt murder, but a verdict could not be reached as to three counts of aggravated battery, and a mistrial was declared as to them. After a second jury trial, he was convicted on each of the aggravated battery counts and sentenced to 2 to 6 years. On appeal from the judgment entered thereon, he contends that (1) his retrial violated the principles of double jeopardy; (2) the proof established that he acted in self-defense; and (3) a wooden board was improperly admitted because it was not shown to be similar to that used by complainant.

At the second trial, Alphonso Redmond testified that he was with a group of persons in front of an abandoned building and that, during an argument with defendant about a girl, defendant said he would cut him (Redmond) before he would allow Redmond to beat him with a 2-by-4 inch board, as he had beaten Freddie Watson; that after arguing for a short while, he (Redmond) turned to enter the building and, as he reached the corner of the building, he "felt like something had hit [him] in [his] back" and he "stumbled around the building, went up in the building [and] got a stick" about 2 to 3 feet long, 1 inch thick, and 3 inches wide; that he went out to where defendant was on the street corner and struck him once across the shoulders and neck—breaking the board, which he then dropped; that defendant turned around and stabbed him in the stomach with a knife; that he grabbed defendant's hand to keep from being stabbed again and tried to get away but was stabbed 11 times before defendant was stopped by Cleven Warfield and others; and that as a result of the stabbing he was hospitalized for 1½ to 2 weeks. He displayed various scars reportedly left by the wounds.

Cleven Warfield testified that he was one of those at the abandoned building when Redmond began talking to defendant; that he did not understand what was said but saw Redmond turn away from defendant, who had a knife in his hand; that he saw defendant stab Redmond, who stumbled into the doorway of the abandoned building; that while he did not actually see the knife strike Redmond's back, he knew it was a stabbing because he observed a cut and a 5- to 6-inch tear in Redmond's shirt; that Redmond emerged carrying a stick about 3½ feet long with which he struck defendant once or twice and then dropped it after it

broke; and that he (Warfield) grabbed defendant to stop further cutting of Redmond.

Henry Baker testified that he was a short distance from the abandoned building and saw defendant, Redmond, and Warfield there; that when Redmond turned to walk away, he saw defendant hit him in the back but did not see a knife at that time; that Redmond went around the corner of the building and returned with a stick about 3 feet long with which he struck defendant across the back; that Redmond dropped the stick when it broke, and then he saw defendant stab Redmond more than once with a knife while Redmond had nothing in his hands; and that Warfield grabbed defendant's hand—after which he broke away and fled.

Officer Wade Crosson testified that after he was arrested and advised of his rights, defendant told him he had argued with Redmond who "had grabbed him around the neck" causing defendant to stab him in self-defense. It was stipulated that Redmond sustained multiple stab wounds, with a total of 13 lacerations—some of which required surgery.

Defendant testified that he was at the abandoned building and, after he told Henry Baker to stay away from his girl, Redmond made a remark which he (defendant) thought to mean Redmond would beat him with a 2-by-4, as he had done to Freddie Watson; that he told Redmond he would cut him if he attempted to do so; that when Redmond grabbed his shirt collar, he pushed him away, and Redmond turned to enter the building; that up to that time, he had not touched or stabbed Redmond; that he then walked to the street corner where, without warning, Redmond hit him twice near the temple, forehead and ear with a rotten 2-by-4; that in their struggle, the board was broken and Redmond hit him with a piece of it; that he cut Redmond with the knife he had taken out after he was struck the second time; that he continued to stab Redmond after he dropped the broken piece of board; that Warfield then grabbed them, but he broke loose and fled; and that though his head was hurting when he was arrested, he did not request medical aid nor tell the police about the board or that Redmond had grabbed him around the neck.

In rebuttal, Larry Baker testified that defendant, in referring to the stabbing, said "something came over me."

Opinion

Defendant first contends that he could not, consistent with the principles of double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10; Ill. Rev. Stat. 1979, ch. 38, par. 3—4(b)), be retried for the aggravated batteries after the jury acquitted him of attempt murder and was unable to reach a verdict on those counts. Defendant was charged with the attempted murder of Redmond by stabbing him with a knife, and with

three counts of aggravated battery based respectively on causing great bodily harm, permanent disfigurement, and use of a deadly weapon. He argues here that those general counts did not adequately apprise the jury either of the location of or the conduct constituting the crimes and thus did not explain which stabbing was connected to the attempt murder count and which to the aggravated battery counts. He maintains that it cannot be ascertained from the general verdict which of the stabbings resulted in acquittal or which could not be agreed upon, and consequently, since aggravated battery is a lesser included offense of attempt murder (*People v. Camacho* (1979), 71 Ill. App. 3d 943, 389 N.E.2d 1213), he was twice tried for at least one of the stabbings for which he had been previously acquitted.

The cases upon which defendant relies in support of his position are unavailing. In *People v. Harrison* (1946), 395 Ill. 463, 70 N.E.2d 596, *cert. denied* (1948), 334 U.S. 812, 92 L. Ed. 1744, 68 S. Ct. 1013, after defendant was acquitted of assault with intent to murder, the victim died, and he was then indicted and convicted of murder. Defendant sought to invoke the acquittal of the lesser offense as a bar to prosecution for murder after the victim died. The court held that defendant could not have been charged with murder at the time he was acquitted of assault with intent to murder, as the victim was still alive and that the acquittal was not a bar to subsequent prosecution for murder. Thus, *Harrison* is inapposite, as defendant here had first been acquitted not of a lesser but of a greater offense, with no verdict having been rendered as to aggravated battery counts and no new element supervening to justify subsequent prosecution for any new offense.

In *People v. Dugas* (1923), 310 Ill. 291, 141 N.E. 769, defendant was convicted of assault with intent to murder and, while the matter was pending on his motion for new trial, the victim died and defendant was indicted for murder and acquitted. The court held that his motion for new trial on the first conviction should have been granted because the acquittal of murder was in bar of lesser included offenses of which defendant might have been convicted on the murder indictment and growing out of the same transaction. Thus, the acquittal of the murder charge necessarily encompassed the lesser included offense of assault with intent to murder. In the present case, by contrast, defendant was not indicted for aggravated battery for the first time after being acquitted of attempt murder. Had such been the case, under the reasoning of *Dugas* the acquittal for attempt murder could have been pleaded in bar of prosecution for aggravated battery. The facts of the present case do not, therefore, warrant the application of the rules announced in *Harrison* and *Dugas*.

■■ In general, a conviction on the greater offense of attempt murder

does not preclude conviction on the lesser included offense of aggravated battery, for the reason that the greater offense includes the additional element of specific intent to kill. (*People v. Todorovic* (1977), 53 Ill. App. 3d 1, 368 N.E.2d 471.) Thus, an acquittal of attempt murder and a conviction of aggravated battery in the same trial means that the accused was found to have committed such acts but lacked specific intent. *People v. Hancock* (1980), 83 Ill. App. 3d 700, 404 N.E.2d 914.

Bearing the above principles in mind, we think the present case is governed by *People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139, where defendant was indicted on one count of attempt murder and two counts of aggravated battery. She was acquitted of the attempt murder charge, but when no verdict could be reached as to aggravated battery, a mistrial was declared and the State subsequently sought to retry her on that offense. Holding that her double jeopardy rights had not been violated, the court stated:

"[T]he section defendant cites [Ill. Rev. Stat. 1973, ch. 38, par. 3—4(b)] prohibiting subsequent prosecution as to crimes which 'defendant could have been convicted on the former prosecution' applies to those instances where defendant is charged with only the greater offense and the trier of fact acquits him of that offense, remaining silent as to all lesser included offenses. In such circumstances any doubt concerning what the jury determination might have been, had they considered any of the included offenses, is resolved in favor of defendant. Silence implies acquittal and defendant may not thereafter be retried on any of the offenses.

In the instant case * * * [a]lthough acquitting defendant of the greater offense, the jury was not silent as to the included offenses. They did consider the charges[;] however, [they] were unable to reach a unanimous verdict as to guilt or innocence. Unlike the cases where the jury is silent, we know defendant was not acquitted here. Therefore, we need not infer an acquittal.

* * * The trial court may declare a mistrial if the jury is unable to reach a verdict. [Citation.] However, it is a well-established rule that the State is entitled to retry defendant on the same charge and the doctrine of double jeopardy is not a bar to this subsequent prosecution. [Citations.]" 41 Ill. App. 3d 392, 393-94, 354 N.E.2d 139, 140.

As in *Jenkins*, defendant here was initially charged with attempt murder and aggravated batteries, and although he was acquitted of attempt murder, the jury could not reach a verdict as to the aggravated batteries. The record further indicates, and defendant so concedes, that there were two separate stabbing incidents—resulting in multiple wounds to the victim—the first being outside the abandoned building and the

second at the street corner. Defendant argues, however, that Jenkins is distinguishable because it involved a single shooting while the present case involved multiple stabbings. He postulates that the charges for attempt murder and the aggravated batteries were each descriptive of and applicable to any one of the stabbing incidents, and therefore that the acquittal on attempt murder relieved him of responsibility for at least one of the stabbings. Since the jury did not indicate which of the stabbings was acquitted, defendant asserts that he could not be retried on the other because of the possibility that the second trial would be for the acquitted stabbing.

■■ We believe, however, that applying the reasoning of *Jenkins*, the jury did not remain silent as to those lesser included offenses, and their failure to reach a verdict on them cannot be logically equated with an acquittal. Furthermore, under the reasoning of *Hancock*, the acquittal on attempt murder reflects the jury's determination that defendant lacked the specific intent to kill and is thus a pronouncement only on the absence of an element not required for proof of guilt as to aggravated battery. Assuming, therefore, that the jury separated the stabbings into two events and acquitted him of attempt murder on one, as defendant suggests, he could nevertheless be retried for aggravated battery on the stabbings for which no verdict was reached and for which there was acquittal of attempt murder.

■■■ Defendant next contends that the State failed to disprove beyond a reasonable doubt that he was acting in self-defense. Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—1) provides in relevant part:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself * * * against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself * * *."

If some evidence is presented sufficient to raise the issue of self-defense, the State must prove defendant guilty beyond a reasonable doubt both as to that issue and each element of aggravated battery. (Ill. Rev. Stat. 1979, ch. 38, par. 3—2.) However, if defendant unreasonably believed that the stabbing of the victim was necessary to prevent his own imminent death or great bodily harm, the assertion of self-defense cannot prevail. (See *People v. Mosley* (1979), 68 Ill. App. 3d 721, 386 N.E.2d 545.) The trier of fact determines whether the use of force by the accused was based upon a reasonable apprehension of death or serious bodily harm in light of his assessment of the situation at the time he used such force against another

*(People v. Moore* (1976), 43 Ill. App. 3d 521, 357 N.E.2d 566), and a guilty verdict will not be disturbed on review unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt *(People v. Kyles* (1980), 91 Ill. App. 3d 1019, 415 N.E.2d 499).

The evidence before us indicates that defendant and Henry Baker were arguing, and when Redmond arrived he and defendant started an argument—during which each allegedly threatened the other. When Redmond turned to enter the abandoned building, according to the testimony of Warfield and Henry Baker, defendant stabbed or hit him in the back. It appears that Redmond then got a board from the building and went to the corner where defendant was standing and struck him with the board, which broke and was dropped by Redmond leaving him empty-handed; that nevertheless defendant repeatedly stabbed Redmond, who attempted to retreat and to repel defendant by holding his arms; and that it was not until he was grabbed by Warfield that defendant stopped stabbing Redmond.

■■ In light thereof, we think it clear that the jury properly convicted defendant of the aggravated battery counts. With respect to the initial stabbing outside the abandoned building, the jury could reasonably have rejected defendant's testimony that he did not stab Redmond prior to being struck with the board in view of the contrary testimony of Warfield that he saw defendant stab Redmond and observed a cut on his back and a tear in his shirt. That testimony was supported by Henry Baker, who stated that defendant hit Redmond in the back, and by Redmond's testimony that after he turned away from defendant he felt something hit him in the back. The positive and credible testimony of even a single witness is sufficient to convict, even if contradicted by the accused. *(People v. Mays* (1979), 74 Ill. App. 3d 145, 392 N.E.2d 106.) Moreover, at the time of the first stabbing, Redmond was unarmed, had turned his back, and was walking away from defendant. Such conduct, in our view, presented no danger of imminent attack and did not justify defendant in believing that he would suffer imminent death or great bodily harm.

■■■ Furthermore, defendant's claim that Redmond grabbed his collar and threatened to harm him before turning and walking away also was properly rejected, as threats alone do not justify the use of deadly force. *(People v. Carbajal* (1978), 67 Ill. App. 3d 236, 384 N.E.2d 824.) Neither did Redmond's actions, indicating a hostile intent dangerous to defendant, make his belief reasonable. Thus, for example, in *People v. Davis* (1975), 33 Ill. App. 3d 105, 337 N.E.2d 256, the defendant and the victim had had an altercation following which the victim snatched a wig off defendant's head and threatened to kill her. Then when he grabbed defendant's collar and again threatened to kill her, she drew a gun and shot and killed him. Holding that the defendant had not acted in self-defense,

the court stated that "[a] belief that the decedent, unarmed, might kill or greatly injure the defendant, while she had a loaded gun, was unreasonable." (33 Ill. App. 3d 105, 110, 337 N.E.2d 256, 260.) In our view, it was equally unreasonable for defendant here, armed with a knife, to believe that the unarmed victim, who had turned his back and was walking away, posed an imminent threat of death or great bodily harm. *Cf. People v. Duncan* (1924), 315 Ill. 106, 145 N.E. 810 (actions of victim evidencing hostile intent included pounding on a bar, challenging defendant to fight, reaching into his pocket, taking out a knife, and lunging at defendant).

■■ Defendant further asserts that his fear was reasonable because of Redmond's statement that he would beat defendant with a 2-by-4 board as he had done to Freddie Watson. Redmond's acts of violence, if known to defendant, may be considered on the question of the reasonable apprehension of danger. (See *People v. Gall* (1979), 79 Ill. App. 3d 823, 398 N.E.2d 1118.) Here, however, the jury rejected defendant's assertion of self-defense and, with it, his claim that Redmond's past acts of violence induced the reasonable belief in defendant that the use of force was necessary to prevent Redmond from killing or greatly injuring him. Finally, even if Redmond had been the initial aggressor, self-defense does not permit the defendant to attack an aggressor who, as here, has abandoned the fight and retreated. *People v. Shappert* (1975), 34 Ill. App. 3d 683, 340 N.E.2d 282.

It seems equally clear also that defendant's actions at the street corner were not reasonably taken in self-defense. He testified that Redmond was hitting him with the remainder of the board during the stabbing. Against that account was the testimony of three eyewitnesses who testified that the board broke when Redmond first struck defendant and was then dropped. Under the circumstances here, the jury was free to believe the testimony of those eyewitnesses (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, and as the use of deadly force generally cannot be justified as self-defense once the aggressor has been disabled or disarmed (*People v. Fields* (1978), 65 Ill. App. 3d 278, 382 N.E.2d 337; *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 350 N.E.2d 170), the jury could reasonably have believed that defendant's actions were not necessary to prevent imminent death or great bodily harm to himself.

■■ Finally, defendant's own account of the incident, given at trial, is inconsistent with the theory of self-defense. He admitted, first of all, that he continued to stab Redmond after he had dropped the piece of wood until Warfield pulled him (defendant) away. Secondly, Larry Baker testified to a statement made later by defendant that he stabbed Redmond because "something came over me." Defendant also apologized to Redmond, stating that he had been "messed up in the head." Finally,

Officer Crosson testified that defendant had initially told him he had stabbed Redmond in self-defense after Redmond had grabbed him around the neck. We find nothing in the evidence before us so palpably contrary to the jury's verdict or so unsatisfactory or improbable as to raise a reasonable doubt of guilt.

Defendant also contends that a 2-by-4 board was erroneously admitted over his objection that a proper foundation had not been made. The State maintains there was a sufficient foundation for admission of the board as a demonstrative aid.

■■ For the introduction of real evidence, it is essential that an adequate foundation be laid which generally requires that it be connected to the incident and the person involved. (*People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.) However, demonstrative evidence is also permissible for the purpose of rendering other testimony more comprehensible to the trier of fact. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848.) As stated in McCormick, Evidence §212, at 528 (2d ed. 1972):

> "Demonstrative evidence, however, is by no means limited to items which may properly be classed as 'real' or 'original' evidence. It is today increasingly common to encounter the offer of tangible items which are not contended themselves to have played any part in the history of the case, but which are instead tendered for the purpose of rendering other evidence more comprehensible to the trier of fact. * * * If an article is offered for these purposes, rather than as real or original evidence, its specific identity or source is generally of no significance whatever. Instead, the theory justifying admission of these exhibits requires only that the item be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact. Whether the admission of a particular exhibit will in fact be helpful, or will instead tend to confuse or mislead the trier, is a matter commonly viewed to be within the sound discretion of the trial court."

In the instant case, defendant, during his cross-examination, stated that the 2-by-4 board in question was of the same dimensions as that used by Redmond and, in his brief here, defendant argues that because the board used by Redmond was rotten "it differed from the actual piece of wood used by complainant [Redmond]" and thus that it was improperly admitted.

■■ We note, however, that the jury was adequately informed that the board used by Redmond was rotten and unavailable and that it was not the board offered by the State. In light thereof, we believe defendant's testimony that the dimensions of the two boards were the same met the foundation requirement as to this illustrative type of demonstrative evidence. We consider that it was sufficiently illustrative of relevant testi-

mony which could be a potential help to the jury—particularly with respect to whether defendant's retaliation was necessary.

Moreover, assuming that the admission of the board in question was error, it was harmless beyond a reasonable doubt, as we are of the opinion that it could not have been a significant factor in the conviction, which we believe resulted from overwhelming evidence of defendant's guilt.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.