THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT RUSSELL, Defendant-Appellant.

Second District   No. 2—85—0176

Opinion filed May 5, 1986.

G. Joseph Weller and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, and Martin P. Moltz, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Robert K. Russell, was charged by information in Lake County on November 16, 1984, with two counts each of attempted murder, aggravated battery (deadly weapon) and armed violence based on the aggravated-battery charge. (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4(a), 9—1(a)(1), 12—4(b)(1), 33A—2.) The armed-violence counts were amended on January 25, 1985, to reflect aggravated battery causing great bodily harm as their predicate felony. (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a).) A jury found the defendant not guilty of the attempted-murder counts, but guilty of all counts of aggravated battery and armed violence. The court entered judgment only on the armed-violence counts and sentenced the defendant to two consecutive 30-year terms of imprisonment.

Defendant contends (1) the consecutive terms were improper as constituting a double enhancement of the element of great bodily harm, and (2) the sentences were excessive and an abuse of discretion.

A detailed recitation of the facts is unnecessary. In brief, the occurrence which precipitated the charges against the defendant took place at the Taco Bell restaurant in Zion. The defendant encountered the two victims as he was waiting at the counter for his previously ordered take-out food. There was evidence the two victims had consumed alcoholic beverages before arriving at the Taco Bell. The counter clerk at Taco Bell, who was acquainted with the defendant, testified the defendant was drunk, but defendant and his girlfriend testified he had not had anything to drink. The clerk testified the defendant said he would shoot her if she did not get his order right, but she felt he was "just kidding." Two other employees who overheard defendant's comment to the clerk also thought he was joking.

Testimony conflicted as to who said what to whom, but one of the witnesses testified the defendant and one of the two victims pushed each other in a manner that led the witness to believe they were "playing." The two victims then began backing away from the defendant, one in front of the other, their hands raised in the air, saying "Don't shoot." The defendant had a black handgun; three successive shots were fired in the direction of the two men. They continued to back away from the defendant, and backed out the south door of the restaurant. The defendant picked up his take-out

order and exited through the south door. Testimony of the defendant and the counter clerk conflicted as to whether before leaving he said to her: "You didn't see anything," or whether she said to him: "I didn't see anything." The two victims reentered the restaurant; both were bleeding and medical assistance was summoned. A bullet was found lodged in the right shoulder of one of the victims, and the other victim underwent surgery due to bullet wounds in his abdomen. The walls of his small and large intestines had been penetrated, and there were powder burns around the entry wound. Two of the wounds to the small intestine were sutured, and a foot of small intestine was removed during a resection to repair the remaining damage to the small intestine; the large intestine wound was cleaned, trimmed, and closed.

In the defendant's testimony, he stated one of the victims had what appeared to be a buck knife with a six-inch blade. He stated he was scared because the two men were drunk and were bigger than he was. The defendant's girlfriend also testified she saw a knife, whereupon she ran out of the restaurant and across the street because she was scared. Other witnesses reported the two men were empty-handed, except one of the men was holding his food order. After he left the Taco Bell, the defendant went to his apartment and awakened a friend who was sleeping on the couch. He gave him the gun and told him to get rid of it because the police were coming. The friend threw the gun into Lake Michigan and later showed the police the area of the lake where he had thrown it.

▌ Defendant first contends the use of great bodily harm to enhance the misdemeanor offense of battery to the felony of aggravated battery and then to impose consecutive sentences constitutes the same type of impermissible "double enhancement" which was found in *People v. Haron* (1981), 85 Ill. 2d 261, *People v. Del Percio* (1985), 105 Ill. 2d 372, and *People v. Hobbs* (1981), 86 Ill. 2d 242. The State argues the court's primary reason for imposing a consecutive sentence was because the defendant was a "vicious and violent person." Further, the facts of the case show there was "a substantial change in the nature of the criminal objective" in that the defendant shot a second victim. As such, the State argues, the consecutive sentences were proper under section 5—8—4(a) of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(a)). The State further argues *Haron, Del Percio,* and *Hobbs* are inapplicable to the instant issue since it could not have been the legislative intent in enacting section 5—8—4 to exempt from the imposition of a consecutive sentence a conviction for armed

violence where the predicate felony is aggravated battery based on great bodily harm.

Defendant replies the court's assessment of his character is irrelevant in determining whether it had authority to impose a consecutive sentence, and that the test for determining whether there was a substantial change in the nature of the criminal objective is not whether there was more than one victim, but whether the defendant's acts were motivated by essentially the same objective.

We find no improper enhancement of the defendant's sentence under the facts of this case.

A person commits armed violence when "while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2.) The predicate felony charged here was aggravated battery, which occurs, *inter alia*, when "[a] person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement." Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a).

When multiple sentences of imprisonment are imposed on a defendant at the same time, the sentences are to run concurrently or consecutively as determined by the court pursuant to section 5—8—4 of the Code. In pertinent part, that section provides:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.
>
> (b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—4(a), (b).

In *People v. Haron* (1981), 85 Ill. 2d 261, the court held that a charge of aggravated battery based on the use of a deadly weapon could not serve as the predicate felony for armed violence. In so holding, the court had concluded that the General Assembly did not intend the presence of a weapon to serve to enhance an offense

from misdemeanor to felony and also to serve as the basis for a charge of armed violence. The court found that section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) contemplated the commission of a predicate offense which was a felony without enhancement by the presence of a weapon. In a subsequent case, *People v. Del Percio* (1985), 105 Ill. 2d 372, the court determined it was improper to predicate an armed-violence charge on attempted armed robbery, stating that: "*Haron* applies whenever a predicate felony is doubly enhanced because of the presence of a weapon." 105 Ill. 2d 372, 377.

There is no question the armed-violence charge at bar was predicated on aggravated battery causing great bodily harm and not on aggravated battery by use of a deadly weapon. As such, we find *Haron* and *Del Percio* inapplicable. Defendant argues, however, that the *Hobbs* case, in which that court felt its holding was "in accord with" *Haron*, is authority for reversal and remandment for a new sentencing hearing or modification of the sentences to be served concurrently.

In *People v. Hobbs* (1981), 86 Ill. 2d 242, the defendant's 1978 felony conviction was used to enhance the misdemeanor charge then pending against him (theft under $150) to a felony (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)), and the prior and current felony were then considered in tandem by the sentencing court as the basis for imposing an extended term. Section 16—1(e) of the Code provided:

"Theft of property, other than a firearm, not from the person and not exceeding $150 in value is a Class A misdemeanor. A second or subsequent offense after a conviction of any type of theft, including retail theft, other than theft of a firearm, is a Class 4 felony." (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(1).)

The extended-term criteria set forth in section 5—5—3.2 of the Code, "Factors in Aggravation" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2) provided:

"The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." Ill. Rev. Stat. 1979, ch. 38,

par. 1005—5—3.2(b)(1).

In reversing the defendant's sentence, the supreme court in *Hobbs* emphasized that absent the defendant's prior offense, the theft then at issue could not have constituted a felony and, thus, did not appear to fit within the legislative intent manifested in section 5—5—3.2(b)(1). The court found the dual use of the defendant's prior conviction first to create the second felony and then to extend the term because of the second felony, was incompatible with the requirement that the charges must be "separately brought and tried and arise out of different series of acts." *People v. Hobbs* (1981), 86 Ill. 2d 242, 246.

We do not find *Hobbs* persuasive authority for the defendant's contention here.

The defendant's conduct here, standing alone, amounted to a Class 3 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(e).) No prior, external, or unrelated conduct of the defendant was used to "enhance" the extent of his instant conduct such that it constituted a felony rather than a misdemeanor. The "enhancement" the defendant suggests occurred here is not the type denounced in *Hobbs* where the self-same factor was used twice: once to aggravate the classification of the offense, and once to aggravate the sentence.

In order for the defendant here to fall within the purview of the consecutive sentencing provisions, it was necessary first, that he had been convicted of multiple offenses, which he was. Second, there must have been *either* a substantial change in the nature of his criminal objective in committing the multiple offenses *or* one of his convictions must be a Class X or Class 1 felony in which he inflicted *severe bodily injury*. When either of those conditions exist, the court *may* impose consecutive sentences *if* the court is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant. Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—4(a), (b).

The jury found the defendant guilty of two Class 3 felony aggravated-battery charges, and two Class X armed-violence offenses. The court entered judgment, however, and thus the defendant was only "convicted" of the two counts of armed violence since the aggravated-battery offenses merged therein as being "necessarily included offense[s]." (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170.) The Class X offenses were based strictly on the defendant's use of a weapon during the commission of two felonies: the aggravated battery of each of the two victims. The multiple Class X convictions against the defendant were proper; it has been recognized that mul-

tiple crimes can arise out of a single act where separate individuals are victims of that single physical act. (*People v. Williams* (1985), 131 Ill. App. 3d 597; *People v. Mercado* (1983), 119 Ill. App. 3d 461.) It was not the causing of "great bodily harm" which brought the defendant within the purview of the consecutive provisions in the first instance; it was his use of a weapon in causing that harm which caused him to be convicted of two Class X offenses.

Thus, the harm caused the victims was only one of three factors considered by the court in imposing consecutive sentences. (*Cf. People v. Davidson* (1984), 128 Ill. App. 3d 282, 288-89 (where the court found *Hobbs* distinguishable as to defendant's contention his sentence was doubly enhanced in that more than simply defendant's prior voluntary-manslaughter conviction was considered in imposing a consecutive sentence).) The third factor considered by the court was the history and character of the defendant and the nature and circumstances of the offense which, ultimately, is the determinative factor in whether a consecutive sentence may be imposed. Section 5—8—4(b) provides the court "shall not impose" such a sentence unless the court's consideration of those items leads it to the conclusion that such a sentence is required to protect the public. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b).

We note additionally that section 12—4(a) uses the phrase "great bodily harm," whereas section 5—8—4(a) uses the phrase "severe bodily injury." One of the canons of statutory construction is that where the legislature uses certain words in one instance and different words in another, different results were intended. (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102; *People v. Harman* (1984), 125 Ill. App. 3d 338, 345.) We note also the case of *People v. Lampton* (1982), 108 Ill. App. 3d 41, where the court considered the defendant's contention that the trial court incorrectly considered, as a statutory aggravating factor under section 5—5—3.2(a)(1) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a)(1)), that his conduct caused serious harm. The defendant contended such a factor was implicit in the offense of armed violence based on aggravated battery, thus, the legislature must already have considered such factor in determining penalties for the offense. The court found:

> "A trial judge may properly consider in sentencing a defendant, conduct which causes bodily harm even in those cases where great bodily harm is arguably implicit in the offense for which a defendant is convicted. (*People v. Hert* (1981), 95 Ill. App. 3d 871, 874.) The amount of harm sustained by a victim in a given situation varies from case to case. It is not a con-

stant but one of degree. Its consideration depends not on the classification of the offense but the peculiar conduct of the actor, which is an ever-changing variable. A sentencing judge does not err in considering the amount of harm as a statutory aggravating sentencing factor in such context." *People v. Lampton* (1982), 108 Ill. App. 3d 41, 47.

■ Similarly here, we believe there can be a difference between the degree of great bodily harm which a jury may, as the trier of fact, find sufficient to find a defendant guilty of aggravated battery and the degree of severe bodily injury which the court may find, in the exercise of its judicial discretion, to be one of the factors which warrants a consecutive sentence.

Accordingly, we conclude the defendant's consecutive sentences were not the result of an improper double enhancement.

■ Defendant's second contention of error is that the court abused its discretion in sentencing him and that the sentences are excessive.

Defendant claims the court's comments at sentencing indicate it "disagreed" with the jury's verdict of acquittal on the attempted-murder charges and that it improperly considered those offenses in sentencing him, thus abusing its judicial discretion.

The State notes the defendant failed to interpose a timely objection at the sentencing hearing for what he now contends was an improper sentencing consideration. As such, the State argues, the issue has been waived as was the case in *People v. Corrigan* (1985), 129 Ill. App. 3d 787. Defendant did not reply to this contention in his brief. We find it has merit. (See also *People v. Woods* (1985), 134 Ill. App. 3d 294, 301-02.) Moreover, our consideration of the record reveals no abuse of the court's discretion in this regard.

Defendant's complaint stems from his construction of the following comment made by the court during sentencing:

> "The jury has found that you were not guilty of attempted murder, presumably because you did not intend to kill them. I believe that you didn't care one way or the other."

The State argues that the court's comment merely reflects the judge's awareness of all the surrounding circumstances of the offenses which are properly considered in determining a defendant's sentence. *People v. Fields* (1972), 8 Ill. App. 3d 1045; *People v. Hightower* (1976), 38 Ill. App. 3d 177; *People v. Marshall* (1975), 30 Ill. App. 3d 17; *People v. Michels* (1979), 72 Ill. App. 3d 182.

In context, the court's comment was made in the course of its assessment of the defendant's conduct and character; to-wit:

"It's my belief that the particular offense, the two offenses, or actually four offenses of the two occurrences, the shootings of these two individuals, is a heinous offense, and I find from the evidence that your attitude in literally shooting them down in cold blood for absolutely no reason whatsoever, the only possible justification was some words exchanged at the counter, shooting them as they had their hands raised and were backing up, and then with a complete disregard for the serious nature of your conduct, the welfare of the individuals, walking out the same door that they had left, either walking past or over their bodies, your remark to the patrons of the establishment, in grand movie fashion, 'You haven't seen anything, you haven't heard anything,' indicates to me an extremely heinous crime.

Also, I am absolutely convinced that you are an extremely vicious, violent person, that you have no regard for the safety of other people. The jury has found that you are not guilty of attempted murder, presumably because you did not intend to kill them.

I believe that you didn't care one way or the other. I think that that conduct certainly would qualify for an extended term of imprisonment."

In the recent case of *People v. Visnack* (1985), 135 Ill. App. 3d 113, the defendant was convicted of murder; he contended, however, that the court improperly considered the offenses of solicitation and conspiracy to commit rape in imposing his sentence where he in fact had been acquitted of those charges. In finding that defendant's contention was without merit, the court noted:

"Although the [trial] court stated:

'I understand that he didn't tell the other two to go out and kill her in such a brutal manner. He didn't tell them directly. But, there was evidence that the actual killing had— let it be known to them or it was made known to them that they could kill Sharon, but bloodlessly, but could also take some liberties, to put it mildly,'

it is apparent that this comment merely pertains to the fact that defendant did not care how his wife was killed, as long as there was no blood. Defendant Visnack's final contention is therefore without merit." 135 Ill. App. 3d 113, 126.

Similarly here, we find the court's comment reflected its opinion that the defendant's conduct showed he was grandiose, callous, cold blooded, and unconcerned with the safety of others. We conclude the

defendant's sentences were not the result of an improper sentencing consideration.

■ We likewise find the defendant's sentences were not excessive. We note initially the court did not impose extended sentences despite its finding that defendant's conduct clearly qualified for same. Rather, after considering all of the relevant statutory factors (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.1, 1005—5—3.2, 1005—8—4(a), (b)), it imposed two 30-year terms of imprisonment to be served consecutively. We find the record supports those consecutive terms.

The defendant had just turned 21 shortly before the occurrence. Although he was single, he was the father of two children, ages three and one. They lived with their mother, Crystal Sauloman, and defendant voluntarily paid her $40 per week and sometimes gave her extra money for diapers and milk. For the eight months prior to trial, defendant had been dating 16-year-old Jill Hunt who was with him at the Taco Bell and who testified on his behalf at trial. Although he had used marijuana and was a regular drinker who would drink to acute intoxication, he stated at the hearing that he had not had marijuana or alcohol since December 1983 when he was placed on one year's supervised probation for the offense of aggravated assault and ordered to serve 90 days in the Lake County jail. There was no record of his having received any alcohol-abuse treatment. Defendant described his father as a "dedicated alcoholic" and reported that of his three sisters and three brothers, one of his brothers also had a drinking problem and had had several contacts with the criminal justice system.

Defendant's juvenile record reveals he was adjudicated a delinquent minor for the offense of theft in November 1979, was placed on probation, and in July 1980 was adjudicated a delinquent minor for criminal damage to property, causing the aforementioned probation to be extended. Wardship was terminated on October 28, 1980. Slightly more than a month later, as an adult, the defendant was arrested and placed on six month's court supervision for reckless driving, no valid driver's license, and fleeing and eluding police. He was fined for disorderly conduct in February 1982 and fined in March 1983 for no valid driver's license. In August 1983 he was arrested for criminal damage to property and placed on six month's court supervision. In October 1983 he was arrested for the previously mentioned aggravated assault, placed on one year's supervised probation and ordered to serve 90 days in the Lake County jail. The instant offenses were committed while he was on probation, and he was

aware that one of the conditions of his probation was that he refrain from possessing a firearm. He explained his work as a laborer for a construction company doing painting, doing sandblasting, etc., took him into some "pretty shady neighborhoods." He stated he kept the gun in his jacket pocket and that is why he had it at the Taco Bell. He regretted having shot the victims, but felt "there was no other way around the situation."

There was evidence received in aggravation over defense objection concerning the circumstances surrounding his conviction for aggravated assault. Former Zion police officer Buege testified he responded to a radio call directing him to defendant's apartment regarding a fight. When he arrived he observed a steak-knife-wielding defendant chasing his brother, Norman; Norman was bleeding from a cut on his shoulder. Defendant, who Officer Buege felt had been drinking but was not intoxicated, ignored the officer's command to drop the knife, advancing on the officer who eventually was backed up against a wall. Other officers and an attack dog responded to the scene, and defendant advanced on them as well, still wielding the knife. The dog was ordered to attack the defendant in order to subdue him. He was handcuffed and taken downstairs. When Officer Buege saw him next, he was exiting the squad car and running across the parking lot and four lanes of Sheridan Road, hands cuffed behind his back. Defendant was captured and carried, struggling, back to the squad car.

In mitigation, defendant's employer testified he was a dependable employee, able to get along with other employees. He stated he would rehire him and felt the defendant must have been provoked to have committed the instant offense. Defendant's mother testified defendant helped her pay for rent, groceries and electricity. Crystal Sauloman, the mother of defendant's two children, testified regarding his support payments to her. She stated she was not then employed, but could work and was looking for a job.

Defendant contends this court's finding in the recent case of *People v. Treadway* (1985), 138 Ill. App. 3d 899, should be the finding of the court in his case as well. Although defendant details factors in each case which arguably may be seen as similarities, he ignores obvious and, we feel, substantial dissimilarities.

In *Treadway*, the defendant was sentenced to 60 years' imprisonment for attempted murder, 60 years for armed violence and one year for aggravated assault, all sentences to run concurrently. Upon appeal, this court reduced his two 60-year extended terms to 30 years each based on its belief the defendant had rehabilitative poten-

tial that would be poorly served by such a long sentence. The court wrote:

"We must look beyond the [trial] court's findings, however, to examine defendant's potential for rehabilitation. The record reveals that defendant was a 24-year-old high school dropout who had been physically abused as a child and had suffered from a drug and alcohol problem since the age of 14. Significantly, prior to the instant conviction, he had only a minor criminal history. These present offenses, though serious, were perpetrated in a fleeting moment of intoxicated rage upon a stranger. The record also reveals that defendant, the father of a young child, personally addressed his alcohol problem at his sentencing hearing and expressed a desire to improve himself. Even before the hearing, while in jail awaiting trial, defendant had joined Alcoholics Anonymous and earned his G.E.D. high school diploma." *People v. Treadway* (1985), 138 Ill. App. 3d 899, 905.

In contrast, the defendant here quit school in the ninth grade. Prior to that he had been truant, and was suspended for fighting, possession of marijuana, and disrespecting a teacher. He also had two very young children, but was not married. The children lived with their mother; defendant was dating a 16-year-old girl. The only evidence defendant had stopped drinking and using marijuana was his own testimony as to that fact; he had received no formal substance-abuse treatment. Although defendant's prior criminal record consisted of misdemeanor offenses, they reveal an escalating pattern of disregard for authority and the person and property of others. The instant offense was committed while the defendant was on probation and with a weapon he routinely kept in his jacket pocket.

The defendant in *Treadway* testified at trial concerning his alcohol and marijuana use on the night of the occurrence and testified he did not remember what happened, although he remembered seeing himself hitting something with a knife in his hand. Here, defendant and his girlfriend testified one of the victims had a knife; defendant testified the knife wielder came at him. None of the six other witnesses saw anything in either victim's hand except an order of food, and the victims were described as having their hands raised, backing away from the defendant saying, "Don't shoot." The jury rejected the defendant's self-defense theory. Given the pointed discrepancy between the defendant and his girlfriend's testimony and that of the other witnesses, the trial court stated its belief that the defendant and his girlfriend had lied on the stand. Moreover, signifi-

cantly, these offenses were not committed "in a fleeting moment of intoxicated rage" as in *Treadway*. They were committed soberly and with the cool detachment of a little man with a big gun.

We find the judge here carefully considered the defendant's rehabilitative potential and found it wanting:

"There is absolutely no doubt in my mind, based upon the history of your criminality, and your conduct in this case, and the character of yourself as demonstrated at the trial, and by your prior acts, that the public requires for their protection, to deter you from further conduct, that you be incarcerated for a substantial period of time."

In *People v. Woods* (1985), 131 Ill. App. 3d 51, 55-56, three consecutive sentences were upheld despite the fact the court recognized, as the trial court had, that the defendant was only 18 years old at the time of the offenses, had no prior criminal record, and may have had some rehabilitative potential. Further, consecutive sentencing is proper where a defendant has been convicted of a Class X felony and inflicted severe bodily injury, even if the defendant's criminal objective may be viewed as having been unchanged throughout the incident. (*People v. Horne* (1984), 129 Ill. App. 3d 1066, 1076; *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1023.) In *People v. Hicks* (1984), 101 Ill. 2d 366, 375, our supreme court stated:

"We have repeatedly emphasized the undesirability of a reviewing court simply substituting its judgment or preference as to punishment for that of the sentencing court. The trial judge is ordinarily best suited to tailor a sentence or other disposition to the needs of the case. He balances the appropriate factors in imposing sentence, and the exercise of this discretion should not be altered upon review absent an abuse of that discretion. [Citations.]"

We find no abuse of the trial court's discretion here which would warrant a reversal or modification of its judgment.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH, P.J., and HOPF, J., concur.