THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DISBY SEALS, Defendant-Appellant.

First District (2nd Division)   No. 84—3041

Opinion filed February 24, 1987.—Rehearing denied March 30, 1987.

James J. Doherty, Public Defender, of Chicago (Nicolette Katsivalis and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula M. Carstensen, and Kathryn A. Gallanis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his convictions for voluntary manslaughter and aggravated battery and his concurrent sentences of 15 years' imprisonment for manslaughter and 5 years' imprisonment for aggravated battery. He raises as issues whether: (1) the circuit court erred in not finding that the State's use of peremptory challenges improperly excluded black jurors because of their race; (2) the circuit court erred in admitting certain demonstrative evidence; (3) the circuit court erred in refusing to admit into evidence a certified copy of the homicide victim's aggravated-battery conviction; (4) defendant's due process rights were violated by improper argument by the prosecutor; (5) the juvenile court abused its discretion by transferring the case for prosecution under the criminal code; and (6) the circuit court abused its discretion by considering improper factors at sentencing.

On November 17, 1983, defendant Disby Seals, then age 14, a member of the Puerto Rican Stones gang, fired five shots from a .45-caliber semi-automatic pistol that killed Ricky Perez, age 19, a member of the Latin Eagles, and wounded Johnny Nieves, age 17, another Latin Eagle. Defendant had been walking with two female friends, Gloria Galvan, age 17, and Kathy Curtis, age 16, near Blaine School when they met three members of the Latin Eagles: Edwin Villariny, age 17, Perez, and Nieves. Nieves told Galvan that she should not wear the sweater she was wearing, and Galvan replied she would wear what she pleased. Perez then asked Nieves, "Who is that punk?" referring to defendant. Two different versions of what happened next were given at trial.

According to Nieves and Villariny, Nieves told Perez that defendant had fired shots at them four weeks earlier. Perez then turned to look at defendant, who drew a pistol from his waistband, causing Perez, Villariny, and Nieves to start running away. Defendant chased them, shouted "Stone Love," and fired shots which hit

Perez and Villariny.

Defendant and his two companions asserted that Nieves, in addition to talking to Galvan, had reached out and tried to grab her sweater and a struggle began. According to defendant, Perez asked defendant what gang he belonged to. After defendant did not reply, Villariny put his hand in the front waistband of his pants as if to pull out a gun and Perez, holding his hands closed and chest high, started towards defendant. Defendant asserts he believed Villariny would shoot him and Perez would hit him. Defendant took one step back, pulled out his gun, and fired five times. According to defendant he did not aim the gun, had never used a gun before, had heard of Nieves and Villariny's having guns, and believed the three Latin Eagles were going to kill him.

After the shooting, defendant and his companions ran away. He returned the gun to Jose Rivera, leader of the Puerto Rican Stones. Defendant then went to 1137 West Belmont, where he was arrested. Perez, Villariny, and Nieves were taken to Illinois Masonic Hospital. Villariny had a bullet removed from his leg which had entered from the back. Villariny also had a bullet bruise to his hip. Perez died at the hospital of massive internal bleeding caused by a bullet that entered through his back and lacerated his lung, bronchus, and aorta.

Defendant claimed to have had three previous hostile encounters with Nieves. On the last day of school in June 1982, while walking home with his younger sister he had been punched by Nieves and Villariny when he denied being a gang member. A third Latin Eagle present kicked defendant in the stomach. As defendant and his sister ran away, Nieves followed and shouted that he would kill defendant the next time they met. Defendant believed he saw a gun in Nieves' hands. In September 1982, defendant and a friend came across Nieves, who ripped a jacket of his friend and reminded defendant of their past meeting. In October of 1983, Nieves hit another friend of defendant's with a crowbar and took a swing at defendant. Defendant further stated he had been given the gun he used on November 17 earlier that day by Jose Rivera for protection against Latin Eagles.

Defendant was indicted on two counts of attempted murder, one count of murder, and one count of aggravated battery. (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1, 12—4.) After a hearing, the juvenile court ordered defendant to be tried as an adult. A jury convicted defendant of voluntary manslaughter and aggravated battery on October 26, 1984. The circuit court sentenced defendant as previously noted. Defendant appeals.

## I

Defendant contends that the prosecution improperly used peremptory challenges to disproportionately exclude black jurors from his jury. The United States Supreme Court's recent decision on this subject (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712) supports defendant's theory. The State asserts that the *Batson* analysis should not be used and, in any case, no purposeful discrimination took place.

■ ▮ ▮ Prosecutors may not purposefully discriminate against a racial group in selecting a petit jury in a trial of a defendant belonging to that group. To establish a *prima facie* case of discrimination, a defendant must demonstrate that he is a member of a recognizable racial group and that the prosecutor used peremptory challenges to remove members of his race from the jury panel. (*Batson v. Kentucky* (1986), 476 U.S. 79, ____, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.) The defendant must then show the relevant facts and circumstances of the case raise an inference of discrimination. After this *prima facie* case is made, the State has the burden of putting forward a neutral explanation for its challenges. The circuit court must then determine whether defendant has proved purposeful discrimination. 476 U.S. 79, ____, 90 L. Ed. 2d 69, 88-90, 106 S. Ct. 1712, 1723-24.

▮ The State contends *Batson* should not be applied retroactively, citing the views of four Supreme Court justices in *Batson* (476 U.S. 79, ____, ____, ____, 90 L. Ed. 2d 69, 91, 97, 110-11, 106 S. Ct. 1712, 1726, 1731, 1741-42) and an even more recent case barring *Batson* relief for cases on collateral review (*Allen v. Hardy* (1986), 478 U.S. ____, 92 L. Ed. 2d 199, 106 S. Ct. 2878). The Supreme Court has now decided this issue adversely to the State's position in *Griffith v. Kentucky* (1987), 479 U.S. ____, 93 L. Ed. 2d 649, 107 S. Ct. 708. There the Supreme Court retroactively applied *Batson* to all cases pending on direct review, such as the present case.

The next question to be considered is whether the facts in this case demonstrate a *prima facie* case of discrimination. In *Batson*, the prosecutors excluded four black jurors. The resulting jury was all white. (*Batson v. Kentucky* (1986), 476 U.S. 79, ____, 90 L. Ed. 2d 69, 78, 106 S. Ct. 1712, 1715.) In the instant case, the record indicates the prosecutors used 10 peremptory challenges to exclude 6 blacks, 1 Latino, and 3 whites, one of the blacks being excluded from becoming an alternate juror. Defendant, the child of a racially mixed marriage, was described by the defense as having the appearance of a black. Only one black served on the actual jury that convicted him. Notwithstanding the fact that one black juror did serve, *Batson* does

not require complete exclusion of a racial group to prove discrimination. (See *Fleming v. Kemp* (11th Cir. 1986), 794 F.2d 1478, 1483 (pointing out that otherwise prosecutors could allow one or two black jurors to serve to immunize their other challenges).) In pre-*Batson* decisions, made under State constitutions, several courts found discrimination when one black juror served, even in cases when that juror was jury foreman. *State v. Neil* (Fla. 1984), 457 So. 2d 481, 482-83, 487; *Commonwealth v. Soares* (1979), 377 Mass. 461, 473, 387 N.E.2d 499, 508, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170. See also *United States v. McDaniels* (E.D. La. 1974), 379 F. Supp. 1243, 1244.

■ Here, the prosecutors excluded twice as many black jurors as white jurors, with the result that only one black juror and one Hispanic juror served. The *voir dire* is preserved and the reasons for exclusion, other than race, are not apparent. This disproportionate use of peremptory challenges establishes a *prima facie* case of discrimination requiring a neutral explanation by the prosecutors or a new trial. The cause therefore must be remanded to the circuit court for reconsideration of defendant's motion for a mistrial based upon the exclusion of potential minority jurors from the jury.

Because we sustain defendant's conviction and sentencing otherwise, as the following discussion reveals, the cause will be deemed affirmed in the event no systematic exclusion based upon race is found by the circuit court after reconsideration and there is no further review sought here. In the event such impermissible exclusion of potential jurors is found by the circuit court, a mistrial shall be declared and defendant shall be granted a new trial.

## II

Defendant asserts that the circuit court erred in admitting a .45-caliber handgun into evidence because the State failed during discovery to disclose its intent to use the weapon, claiming the prejudicial impact of the weapon outweighed its probative value. The State replies that defendant was not prejudiced by the use of the gun, which helped Sergeant Vincent Lamoro testify regarding the casings found at the crime site.

■ Demonstrative evidence can be used to make other testimony more understandable. (*People v. Chatman* (1981), 102 Ill. App. 3d 692, 701, 430 N.E.2d 257.) If it provides a visual aid for the jury, it should be used for factual explanation, not dramatic effect. (*Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 75, 77, 134 N.E.2d 516.) The use of demonstrative evidence is within the discretion of the trial court. (10

Ill. App. 2d 67, 76-77, 134 N.E.2d 526.) It should be observed that defendant in the present case admitted firing the gun that caused the injuries and death, his defense having been based upon the theory of self-defense. The jury was told that the gun demonstrated was not the gun used in the shootings, since that weapon was never recovered.

In the case *sub judice*, the gun was used only briefly during Sergeant Lamoro's testimony, but was not permitted to go to the jury. It may have helped explain Sergeant Lamoro's testimony. When original objects are unavailable, similar or identical physical objects have been allowed into evidence. See *People v. Chatman* (1981), 102 Ill. App. 3d 692, 701-02, 430 N.E.2d 257; see also *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 1069, 478 N.E.2d 469, *appeal denied* (1985), 108 Ill. 2d 561.

Defendant's discovery motion had requested a description of any tangible objects which the prosecution intended to use. A gun is a tangible object. Accordingly, the State should have disclosed its intent to use the gun. In view of the limited use of the gun, however, this error in discovery response did not prejudice defendant. *People v. Greer* (1980), 79 Ill. 2d 103, 117, 120, 402 N.E.2d 203.

## III

Defendant also contends that he was prejudiced by the court's failure to admit into evidence a certified copy of the homicide victim's prior conviction for aggravated battery because the State tried to minimize that incident when a defense witness testified to the battery. The State responds that such evidence would have been cumulative and that even defendant's version of the facts asserts Villariny, not Perez, was the aggressor.

A defendant claiming self-defense has the right to present evidence of a victim's aggressive and violent behavior which can be relevant to indicate which party was the aggressor. (*People v. Lynch* (1984), 104 Ill. 2d 194, 199-200, 470 N.E.2d 1018.) Battery convictions are fairly reliable evidence of a violent character. (104 Ill. 2d 194, 201, 203, 470 N.E.2d 1018; *People v. Trimble* (1985), 131 Ill. App. 3d 474, 477, 475 N.E.2d 971.) Before a court admits evidence of a victim's character, a defendant must provide some evidence that the victim was the aggressor. (*People v. Lynch* (1984), 104 Ill. 2d 194, 204, 470 N.E.2d 1018.) Here, defendant testified that he saw Villariny reach into his pants, thought he was going to pull out a gun and kill him, and therefore pulled out the gun given him by Rivera for protection and began shooting at the victims. The only potential aggressor at that point was Villariny, not Perez, whose criminal record was at is-

sue. Although defendant claimed that Perez advanced closely upon him at the same time that Villariny allegedly reached for a gun, both shooting victims were shot from the back.

■ The record also discloses that substantial evidence of the specific prior incident had been presented. Therefore, failure to permit additional evidence of that same incident may be deemed harmless error. (*People v. Cleveland* (1986), 140 Ill. App. 3d 462, 471-72, 488 N.E.2d 1276.) Daniel Greer was involved in that altercation and testified in detail with respect to Perez' role in the battery which was the subject of the criminal record sought to be admitted. Any error in its exclusion from evidence, therefore, was harmless.

## IV

Defendant asserts improper and prejudicial remarks of the prosecutors both separately and cumulatively denied him a fair trial. The State contends that these remarks are proper comment or, alternatively, were harmless error.

## A

In closing rebuttal the prosecutor urged the jury not to find a verdict of voluntary manslaughter because "[t]o get to that point, however, you have to believe Disby Seals. You have to believe the defense case." Defense counsel's objection to shifting the burden was overruled and the prosecutor continued, stating, "because the minute he puts a case on, that case is subject to the same scrutiny that the People's case is."

■■ ■ An accused is presumed innocent until a jury finds otherwise beyond a reasonable doubt. (*People v. Ray* (1984), 126 Ill. App. 3d 656, 661, 467 N.E.2d 1078.) It is improper to argue that the defendant has to provide evidence to create a reasonable doubt. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 469-70, 220 N.E.2d 432.) Although the prosecutor's argument, that the jury had to believe defendant to find voluntary manslaughter, not murder, may have been improper, this error was harmless since the jury convicted defendant of voluntary manslaughter, not murder.

■ Defendant's claimed error in the prosecutor's characterization of the burden of proof as not overwhelming and the same in every jurisdiction cannot be sustained. Such remarks are not improper. *People v. Bryant* (1983), 94 Ill. 2d 514, 523, 447 N.E.2d 301; *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 834, 494 N.E.2d 498.

### B

██ Defendant urges error in the prosecutor's assertedly unfair arguments that defendant had run away from home and was living with gang members. One of the prosecutors asserted that defendant was living with the Puerto Rican Stones; he did not state that defendant ran away from home. Defendant testified that he considered the gang very important in his life, but that he lived elsewhere with a friend who was not a gang member. Although the prosecution may not assert a fact not based on the record, it was harmless in these circumstances since defendant's gang membership was admitted.

### C

Defendant asserts that other improper prosecutorial remarks prejudiced him, particularly by their cumulative effect; however, none of these remarks, either separately or cumulatively, rises to the level of prejudicial error.

### V

Defendant contends that the juvenile court abused its discretion by ordering a transfer for defendant's prosecution as an adult, over-emphasizing that a life was lost. By statute, six factors must be considered in making such a decision (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)(a)), which include whether: (1) there is sufficient evidence for a grand jury indictment; (2) there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the minor's age; (4) his previous history; (5) facilities are available to the juvenile court for the minor's treatment and rehabilitation; and (6) his best interest and the public's security require that he continue in custody or under supervision for a period extending beyond his minority.

██ The juvenile court gave attention to all these factors, together with the evaluations of a probation officer, psychiatrist, and psychologist. Defendant was just two months short of age 15 when he shot his victims and had two pending charges against him. There is no evidence to justify a finding of abuse of the court's discretion. *People v. Clark* (1986), 144 Ill. App. 3d 420, 427-28, 494 N.E.2d 551; see *People v. Taylor* (1979), 76 Ill. 2d 289, 300-01, 391 N.E.2d 366.

### VI

As his final argument, defendant insists there was an abuse of discretion in his sentencing. Defendant received the maximum sentence on both counts, 15 years' imprisonment for voluntary man-

slaughter and a concurrent term of 5 years' imprisonment for aggravated battery. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(c), 12—4(e), 1005—8—1(4) and (6).) The court emphasized that one victim had died and that shooting people in the back was a "cowardly act." It also stated: "I will never understand the jury's verdict \*\*\*."

The court heard testimony in both aggravation and mitigation. A teacher at Oak Park-River Forest High School testified that six months after the shooting, he and defendant had an argument during which defendant threatened to get a .45-caliber gun and kill him. In mitigation, a minister testified to defendant's improvement since the shooting and defendant's uncle testified to his lack of a father image and his recent living free of gang influence.

■■■ The trial court is best suited to determine the most appropriate sentence. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473; *People v. Staten* (1986), 143 Ill. App. 3d 1039, 1058, 1060, 493 N.E.2d 1157.) The sentence should contemplate both the seriousness of the offense and defendant's potential for rehabilitation. (Ill. Const. 1970, art. I, sec. 11.) Here the teacher's testimony raised a serious doubt concerning defendant's potential for rehabilitation. The comment of the judge about not understanding the jury verdict is similar to another comment by a sentencing judge recently held not improper. (*People v. Russell* (1986), 143 Ill. App. 3d 296, 304-05, 492 N.E.2d 960.) We find no abuse of discretion.

In consideration of the foregoing, we affirm and remand for consideration by the circuit court of defendant's claim of juror selection discrimination. In the absence of such a finding, the conviction and sentence stand affirmed. Should the circuit court find an improper use of the State's peremptory challenges, it is directed to vacate the conviction and sentencing and grant defendant a new trial.

Affirmed in part and remanded with directions.

SCARIANO, P.J., and STAMOS, J., concur.