JOHN A. BROWN

*v.*

FREDERICK H. LUEHRS.

*Filed at Ottawa May 18, 1880.*

1. CHANCERY—*granting new trial at law.* In order to justify a court of chancery in setting aside a judgment at law and granting a new trial, the case must appeal strongly to the chancellor for relief. It is by fixed and determinate rules alone that this jurisdiction will be exercised. It is never done capriciously or as a matter of mere discretion, nor because the court of chancery may differ from the jury on the finding of the facts upon the evidence.

2. Nor will the new trial be granted unless the judgment has been obtained by fraud, accident or mistake, and without fault on the part of him who asks it.

3. If, however, a party has made every effort in his power to discover evidence and fails, when afterwards discovered courts of equity treat this as an accident, and will, when satisfied that such newly discovered evidence would have produced a different result if it had been known in proper time, and that the judgment is unjust, grant a new trial. But all these elements must concur before the relief will be granted.

4. In this case, a witness had given his deposition, which was read on the trial of a suit at law, in which he testified that he had paid to one of the parties, for the other, a considerable sum of money, and the finding and judgment were the result of that testimony. Subsequently, and after the judgment was rendered, the same witness gave a second deposition, in which

he stated that his former testimony, in regard to the payment of the money, was not true. The application for a new trial was based upon this second deposition, the party relying upon it to overcome the former. But on the facts appearing, it was considered the second deposition should not be given that effect. Moreover, the party seeking relief had not used proper diligence in ascertaining from the witness before the trial the grounds of the testimony he was apprised the witness was intending to give. Upon the whole case the relief was denied.

APPEAL from the Appellate Court for the First District.

Mr. HENRY C. WHITNEY, for the appellant.

Messrs. BARNUM & VAN SCHAACK, and Mr. WILLIAM G. McMILLAN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by appellant, to obtain a new trial at law. The ground relied on is, that since the rendition of the judgment at law complainant had discovered new evidence, which would change the result on another trial. This has been a protracted litigation, with an unusual number of trials, with varying results. The case was previously before us, and is reported in 79 Ill. 575, where all of the facts as they then appeared are stated in full. A new trial was had in the Superior Court, by virtue of the decision of this court, and resulted against appellant. He removed the case to the Appellate Court, where the judgment was affirmed.

Appellant thereupon filed this bill, and in it he alleges that one M. G. Cowles, who was a witness, and who gave his deposition on the 4th of March, 1875, had on the 4th of November previously made an affidavit substantially the same as his deposition, which was filed with appellee's bill for a new trial at law, on the ground that Cowles's evidence was discovered after the trial at law. In his first deposition Cowles testified that he paid to appellant $1000, for appellee, specifying time, place and circumstances. In this bill appellant alleges that Cowles had retracted all he testified to in regard

to the payment of the $1000, and he so testified. But on a hearing the court found against complainant, and he thereupon appealed to the Appellate Court, where the decree of the Superior Court was affirmed, and he brings the record to this court.

For a reversal, it is urged that the evidence required that a new trial should have been decreed, and the court erred in dismissing the bill. ·

In cases of this character this court recognizes the rule that they must appeal strongly to the chancellor for relief before he is at liberty to afford it and vacate a judgment at law. It is by fixed and determinate rules alone that this jurisdiction will be exercised. It is never done capriciously, or as a matter of mere discretion, nor because the court of chancery may differ from the jury on the finding of the facts on the evidence. Nor will it usually grant a new trial, unless the judgment has been obtained by accident, mistake or fraud. Where a party has had the opportunity to make his defence at law and fails or neglects to do so, public policy requires that further litigation on that matter should cease and the controversy terminate, unless by accident, mistake or fraud the party has, without his fault, been prevented from establishing his claim or defence.

If, however, a party has employed every effort in his power to discover evidence and fails, when afterwards discovered, courts of equity treat this as an accident, and will, when satisfied that such evidence would have produced a different result, and the judgment is unjust and should not be paid, grant a new trial, but all of these requirements must concur before such relief will be granted. It must appear that the judgment is wrong, that the knowledge of the evidence has come to the complainant after the trial, and that he had exhausted all reasonable means and efforts to discover it before the trial, and when introduced on a new trial it will produce a different result. See *Holmes* v. *Stateler*, 57 Ill. 209. The same

rule has been announced in other cases, and is the well recognized doctrine of the court.

In this case we are of opinion that complainant has not brought himself within the rule.     He relies principally, if not entirely, on Cowles' second deposition to overcome his first.    We can not say it is the more worthy of belief.    In his first he swears that he knew complainant and paid him the money.    In the latter he swears that complainant is not the person to whom he paid it.    He also states that when complainant saw and conversed with him in reference to the payment of this money, in Kansas, in the spring of 1878, he then knew that complainant was not the person to whom he paid it, but did not disclose the fact to complainant.    It would seem that such an act is almost unaccountable.    If the witness is truthful and has but the average sense of justice, and was so anxious to have the wrong corrected, why not disclose this highly important fact?    But conceal it for months!    It seems to be incredible.    It raises the inference that other motives than a desire to do justice to complainant controlled his subsequent acts.

That the money was handed to witness with which to pay complainant, he has testified in all his affidavits and depositions.    It is also otherwise proved, and it can not be doubted, that he either paid it to complainant, or to a person who represented him and forged his name to the receipt, or the witness embezzled and appropriated it to his own use.    There is no evidence that there was another person of exactly the same name to whom it was probably paid.    The witness' character it seems was then good, whatever it may have become since.    And all the circumstances considered, and his manner of testifying, impress us with the belief that his first deposition is true.    It has more of the appearance of truth than the latter.    He says in his first, that he has seen the complainant a great many times,—could not say how often, but knew him as he knew other business men; that he had spoken to him frequently on the street, and, he thinks, in the

store where witness was book-keeper. He also answers, to the second question, that he knew both parties to the suit, and had been acquainted with them since 1867.

In his second deposition, he states he was not aware that he swore in his deposition of 1875 that he knew complainant and had seen and met him frequently; that he did not know the man to whom he paid the money, except that Busch pointed the man out to him on the street, as John A. Brown, to whom he paid the money. He then contradicts himself by saying he had seen the man to whom he paid the money frequently, and supposed him to be John A. Brown; that he knew but one John A. Brown in Chicago in the fall of 1870. The evidence in this second deposition entirely fails to impress us that it is true. His memory may be impaired since his first deposition was taken, or other causes may have operated to obscure his memory.

Again, as early as in the autumn of 1874 complainant was apprised by the affidavit, when the bill was filed by appellee, that the witness would swear that he had paid the money to complainant. He does not seem to have seen the witness in reference to the payment of the $1000, until April, 1878, near three years and six months after the affidavit was filed, and over three years after his deposition was taken.

If complainant knew he never had received the money, why is it that he did not see Cowles earlier to endeavor to have the mistake rectified? If his deposition was untrue, why not act with promptness? He knew the testimony was vital to his recovery, and if a stranger to him—as the witness swears in his second deposition—he must have known there was a mistake if the witness was honest, or, if capable of being suborned, that his character was likely to be such that his evidence would be capable of being impeached. But we find no evidence in the record that appellant made any effort to avoid its effect by either course. We are, therefore, of opinion appellant has not made a case that requires equity to interfere.

It is, however, insisted that the case of *Seward* v. *Cease,* 50 Ill. 231, is conclusive of this. We are unable to so regard it. In that case, as in this, a witness made an affidavit, which was made a part of the bill, which stated that he had sworn falsely on the trial at which the judgment was obtained. There was a motion to dismiss the bill, for want of equity appearing on its face. The motion was treated as a demurrer, and as admitting the allegations of the bill to be true. It was said in that case—as the bill stated the only evidence on which the judgment was recovered was false, and the witness who gave it had voluntarily made an affidavit of its falsity, and stating his desire to retract the same, which affidavit was made an exhibit with the bill,—that it was not a case of conflict of evidence, but it appeared, by admitting the bill to be true, an unrighteous judgment had been obtained on perjured evidence, and the perjury being admitted, the court could not do otherwise than hold that a case had been shown requiring, if proved by the evidence, a decree for a new trial. Here, however, the fact of the perjury is not admitted, nor that the judgment is unrighteous, nor were these facts proved on the trial.

Nor is the case of *Wilday* v. *McConnel,* 63 Ill. 280, decisive of this. There, receipts for the payment of the money for which the judgment was obtained were found after the judgment was recovered. At the time judgment by default was rendered the receipts were forgotten by the defendant, but were afterwards found. It was held that it would be inequitable to twice collect the money, and a new trial was ordered to be decreed. But in that case the receipts rendered it certain the money had been paid. Here, the payment is not proved, hence the two cases are wholly dissimilar.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*