THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GARY CLARK, Defendant-Appellant.

Fourth District   No. 4—85—0366

Opinion filed May 13, 1986.—Rehearing denied July 21, 1986.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Acting pursuant to the provisions of section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)) the circuit court of Macon County permitted the criminal prosecution of defendant, Gary Clark, then 14 years of age, for several crimes including two murders. Defendant was convicted of the two murders as well as the other crimes. Because defendant was guilty of more than one

murder, the circuit court was mandated by the terms of section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) to impose upon defendant a sentence of imprisonment for his natural life.

On appeal defendant raises no issue of reasonable doubt and therefore no extended recitation of the facts will be found in this opinion, but only sufficient facts to make clear what the issues are. They revolve generally around ᴜe proposition that a sentence of natural life for a 14-year-old violates certain constitutional provisions. Defendant also questions the procedures used in transferring him from juvenile proceedings to adult criminal proceedings.

Specifically, the issues raised on appeal are: (1) whether the trial court abused its discretion in transferring defendant to adult criminal prosecution; (2) whether defendant was denied due process at his transfer hearing; (3) whether defendant was denied his sixth and fourteenth amendment rights of confrontation when the trial court considered hearsay evidence of a codefendant; (4) whether a natural-life sentence imposed on a 14-year-old violates the due process clause of the Illinois Constitution; and (5) whether the mandatory imposition of a natural-life sentence precludes consideration of evidence in mitigation and thereby violates the eighth and fourteenth amendments. We find no merit in any of the issues and therefore affirm.

The proceedings were begun on July 5, 1984, when a petition was filed in the circuit court of Macon County pursuant to section 4—1 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—1) alleging that defendant was delinquent because of his commission of a burglary on June 4, 1984. On July 24, 1984, first and second supplementary petitions were filed alleging that on July 13 or 14, 1984, defendant, while in the process of committing residential burglary, had committed two felony murders (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3)) and also the offense of burglary to a vehicle. Subsequently, the State filed a petition under section 2—7(3) of the Juvenile Court Act requesting permission to prosecute defendant as an adult for the conduct alleged in the various petitions. After holding an evidentiary hearing, the court entered an order on August 31, 1984, authorizing the State to do so.

On September 5, 1984, informations in 23 counts were filed charging defendant with the murders of Prentice and Effie Curfman together with the offenses of robbery, residential burglary, home invasion and aggravated criminal sexual assault. The place of trial was subsequently transferred, on defendant's motion, to Tazewell County. On January 24, 1985, following a jury trial there, Judge Donald

Morthland presiding, defendant was convicted of robbery and residential burglary. The jury was unable to agree as to the other charges and was discharged. After a subsequent jury trial in Tazewell County, Judge Jerry Patton presiding, defendant was convicted of the two murders, home invasion, and criminal sexual assault. On April 29, 1985, the court, noting that it had no discretion in regard to the murder convictions, sentenced defendant to imprisonment for his natural life for the two murders, and imposed (1) two sentences of 15 years' imprisonment for two offenses of home invasion and aggravated criminal sexual assault; (2) two four-year sentences for robbery; and (3) one sentence of seven years for residential burglary. All of the sentences for offenses other than murder were ordered to be served concurrently with the murder sentence.

Section 2—7 of the Juvenile Court Act prohibits criminal prosecution of minors who are under 17 years of age at the time of the offense to be charged with certain exceptions. Section 2—7(2) states that criminal prosecutions may be brought for traffic, boating, or fish and game violations. Section 2—7(6)(a) requires that criminal prosecutions *must* be brought for murder, aggravated criminal sexual assault, or armed robbery committed with a firearm, and all charges arising from the same incident giving rise to those charges if the offender was at least 15 years old at the time of the offense to be charged. As used here, section 2—7(3) permits prosecution of a minor at least 13 years old for any offense if, upon motion of a State's Attorney and after an investigation, a "Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions" acts before an adjudicatory hearing has been held and enters an order permitting such a prosecution. Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).

Section 2—7(3) requires that, before authorizing criminal prosecution, the court must find "it is not in the best interests of the minor *or* of the public to proceed under" the Juvenile Court Act (emphasis added) (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)). Among the matters to be considered are:

"(1) [W]hether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether *the best interest of the minor and the security of the public may*

*require that the minor continue in custody or under supervision for a period extending beyond his minority."* (Emphasis added.) Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)(a).

The transfer hearing was held on August 31, 1984, before Judge John Davis. Officer Mark Barthelemy of the Decatur police department testified concerning the investigation and arrest of defendant and Rodney Baltimore, who was also charged with the Curfman homicides. Barthelemy stated that defendant made two statements shortly after he was arrested on July 19, 1984, concerning his involvement in the incident occurring on July 14 at the Curfman residence. During his first interview defendant indicated that he went to the Curfman residence at Baltimore's insistence and defendant did not go in the house. During his second statement to the police, defendant indicated that he entered the house, began searching for money in Mrs. Curfman's bedroom, and she awoke. Barthelemy stated that defendant shoved her back down on her bed and hit her in the chest with his fist. He stated that he then became frightened and left the house immediately with approximately $15 he had found in the house. Barthelemy stated that defendant lived two houses away from the Curfmans and several days prior to their death there had been two arguments between defendant and the Curfmans.

Direct examination of Barthelemy was concluded by his statement that defendant was 14 years of age at the time the offenses were committed, and that the Decatur police department juvenile records indicated that defendant had three prior station adjustments.

On cross-examination, Barthelemy admitted that Baltimore was a 19-year-old convicted felon and a fugitive from justice. He further stated that on the morning of Baltimore's arrest, Baltimore had attempted two residential burglaries and was in the process of a third burglary when apprehended. In addition, Barthelemy indicated that Baltimore's fingerprints were found at several locations inside the Curfman residence but there was no positive identification of defendant's fingerprints inside the residence.

Barthelemy stated that Cortez Woodland, a minor arrested in conjunction with a related burglary, indicated to Barthelemy that he and defendant were both afraid of Baltimore because Baltimore was alleged to be a street-gang member in Chicago.

Robert Ernst, chief juvenile probation officer for Macon County, testified at the transfer hearing. He said that he had not interviewed defendant, but he was aware of the allegations in the petition against him, and knew of no facilities in the State of Illinois which were available for the treatment or rehabilitation of the minor defendant

in connection with the petition filed against him. It was his opinion that it was in the best interest of the minor that the case be transferred. Defendant made a continuing objection that the transfer hearing was being conducted as if it were a dispositional hearing and that the probation officer had no knowledge of the best interests of defendant. The objections were overruled on the basis that Ernst was testifying to statutory factors the court needed to consider in order to make its determination.

On cross-examination Ernst testified that there was one petition for adjudication of wardship pending in regard to defendant and that he had never been on probation or on court supervision. At the close of the transfer hearing the court found there was sufficient evidence on which a grand jury could be expected to return an indictment, that the alleged offenses were committed in an aggressive and premeditated manner, that that minor was 14 years of age, that there were no facilities available to the juvenile court for treatment and rehabilitation of the minor, that the best interests of the minor and the security of the public required continued custody or supervision beyond defendant's 21st birthday. The court, looking at the evidence as a whole, including evidence as to defendant's previous history, indicated that it was not in the best interests of the minor and of the public to proceed under the Juvenile Court Act.

At trial defendant testified in his own behalf that he had known the Curfmans all of his life and that he had argued with them in the past. He stated that on the evening of July 13, 1984, Baltimore suggested they burglarize the Curfman residence. Defendant said he went along because he was afraid of Baltimore. He said that Baltimore put a ladder up to the Curfmans' bathroom window, entered the house, and defendant remained outside for 45 to 50 minutes. He said that Baltimore told defendant to wait a few minutes before entering the house, but he eventually did go in the house. Defendant said that he saw blood on the shoe of Baltimore, Mrs. Curfman laying on a bed, and drawers pulled out in the house. He said that at that point he attempted to leave, and Baltimore refused to let him. He said he did leave, however, with Baltimore remaining behind.

Defendant testified that, after his first interview with the police on July 19, 1984, the police arranged a confrontation between Baltimore and defendant. He testified that Baltimore acted "mean" and attempted to persuade defendant that defendant had been the killer. Defendant testified that after the confrontation with Baltimore, he made a second statement wherein defendant said that he had gone into the house, searched for money, and hit Mrs. Curfman in the

chest with his fist when she awoke. When asked why his first and second statements were inconsistent, defendant said that he was afraid of Baltimore because they were in the same cell.

Danny Lee Burns testified for the State that he and several boys including defendant were in the television room at the Logan County detention center sometime in November 1984. According to Burns, defendant indicated that he was being held because he had jumped up and down on some lady's chest and broke her rib which punctured through her heart and killed her. On cross-examination Burns admitted he was facing the possibility of going to the Department of Corrections, and after talking to the State's Attorney's office, he was assigned to Gateway House.

The defense presented the testimony of several other boys who were present during the conversation between Burns and defendant. According to Dan Archie, defendant told Burns he was being held because "they said he killed somebody." Ben Nelson, Stacey Bates, and Jack Bibbman were all present in the television room at the time of the alleged conversation between Burns and defendant, and each testified he did not hear defendant's response to Burns' question.

The defense also presented evidence that the fingerprints found in the Curfman home on the evening of the alleged incidents matched the fingerprints of Baltimore but not of defendant.

The evidence clearly showed that defendant was guilty of murder of Effie Curfman. He was also guilty of the murder of Prentice Curfman on a theory of accountability, the actual homicide having been committed by Rodney Baltimore. At the sentencing hearing before Judge Patton defendant argued that the transfer to adult criminal prosecution was an abuse of the court's discretion and that the consequent convictions of two murders and sentence of natural life (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) violated the eighth amendment of the United States Constitution and the due process clause and separation of powers clause of the Illinois Constitution of 1970.

In imposing sentence Judge Patton stated that he had read *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, on the question of transfer and found no imperfection in Judge Davis' order under that authority. He further held that he had no discretion under the statute and therefore imposed a sentence of natural life for the homicides.

As is argued in the dissent in this case, the core issue is whether a 14-year-old should be exposed to a term of imprisonment for natural life. This hinges upon whether at the transfer hearing the possi-

bility of such punishment was adequately considered. We find no basis for saying it was not.

Defendant has presented various arguments concerning each of the factors to be considered by the court at the transfer hearing. He maintains that the evidence supporting each one was insufficient. The question is controlled by *Taylor*.

In that case the supreme court held that the State need present only sufficient evidence to persuade the trial court that in its sound discretion transfer is warranted in the light of the statutory factors. The *Taylor* court did not consider the transfer hearing to be adjudicatory and therefore the safeguards required at criminal trials and adjudications of delinquency were not mandated by due process. The strict rules of procedure do not apply, although the general requirements of fair treatment do. In addition, *Taylor* held that the trial judge is not required to make an arithmetical calculation as to the weight to be given each factor. It further held that the trial court could make use of all documentary and testimonial evidence "of a reliable nature" even though it might be hearsay. *People v. Taylor* (1979), 76 Ill. 2d 289, 305, 391 N.E.2d 366, 373.

■ We have examined the record with care and find that there was sufficient evidence to transfer defendant. There was strong evidence that he was involved in burglary and murder. Even though much of this evidence came from testimony of police officers regarding statements made to them by Baltimore which implicate defendant, it was not incompetent under *Taylor*. Defendant also argues the lack of any psychological reports concerning his mental health. This argument seems specious in view of his statements to the investigating officer in his presentence report in which he stated that he had good mental and emotional health and had received no treatment for any mental and emotional disorder. We know of no authority which requires the trial court to order a psychiatric investigation prior to a transfer order. If any such disorder were suspected to be present, the proper forum for its disposition would be in the trial court as in any other criminal case.

It is undisputed that the age of defendant was 14 at the time of the offenses. However, defendant argues from this established fact that only two sentencing alternatives would be open. The Juvenile Court Act forbids the transfer of a minor under the age of 13. (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).) The same statute requires the transfer of a minor at least 15 years of age and charged with murder, aggravated criminal sexual assault, or armed robbery committed with a firearm. (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(a).)

Hence, in the case of a 14-year-old charged with multiple murders, there are only two options: (1) retention in the juvenile system until he reaches age 21, or (2) transfer to adult prosecution with a term of life imprisonment. Defendant argues that at the transfer hearing the trial judge did not recognize this situation, and, if he had, he would not have authorized the transfer.

■ While it is true that Judge Davis at the transfer hearing did not articulate *in haec verba* his recognition of sentencing alternatives, nonetheless the record contains testimony that the security of the public required that the minor remain in custody for a period extending beyond his minority. The probation officer so testified and the trial court, looking at the evidence as a whole, so found. As a matter of logic, it would be impossible at the transfer stage to determine how long that period might be. That would necessarily depend on the outcome of the trial. If the defendant were found not guilty of one of the homicides, the entire question of natural-life imprisonment would become moot.

■ Defendant appears to argue, as does the dissent, that murder by accountability is qualitatively different from murder itself. In his brief before this court defendant states that there was sufficient evidence upon which a grand jury could have indicted him for murder by accountability, but, he argues, there is no direct evidence except for the statement by Baltimore that he committed murder. The short answer is that the accountability statute (Ill. Rev. Stat. 1983, ch. 38, pars. 5—1, 5—2) makes both parties guilty as principals. Even though defendant's participation in the murder of Prentice Curfman might be less heinous than his killing of Effie Curfman, it still does not alter the legal fact that he is guilty of both. The accountability statute admits of no degrees. When, as has been established, the defendant is equally guilty of two murders, it would create a totally anomalous situation to retain him in the juvenile system for 7 years for one of them and for a term of not less than 20 but not more than 40 years for the other, provided the aggravating factors are not present upon which natural-life imprisonment could then be imposed under section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b)).

In sum, we find no abuse of discretion on the part of the trial court in authorizing the transfer to adult prosecution.

■ In his second issue, lack of due process at the transfer hearing, defendant argues that the trial court did not consider sufficient information regarding his background and renews his contention that he should have been given a psychiatric examination. Defendant

relies on a statement from *Kent v. United States* (1966), 383 U.S. 541, 557, 16 L. Ed. 2d 84, 95, 86 S. Ct. 1045, 1055:

"[W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports *which presumably are considered by the court,* and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." (Emphasis added.)

The *Kent* court was speaking of the procedural due process right of access. Any presumption that a court would be considering particular types of reports does not indicate a holding by the court that the existence of such reports was a constitutional requirement in every case. In the case of *In re Burns* (1978), 67 Ill. App. 3d 361, 385 N.E.2d 22, the court held that consideration of psychological reports was permissible in a case of this nature but did not say that presentation of such reports was required.

In *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976, the Supreme Court held that fundamental fairness is the basic due process requirement in a juvenile proceeding. In *Taylor* our supreme court held that an essential right in a transfer proceeding is the preservation of such a record that the reviewing court can determine whether the trial court abused its discretion.

In our opinion all of these requirements were met in the instant case. The trial court had all of the police testimony and the testimony of the probation officer. While the latter had not personally interviewed defendant, he was acquainted with the facts and had been in the courtroom during the police testimony. The investigatory requirements of *Kent* and our statute have been met and the record is sufficient under *Taylor* for our disposition. We perceive no denial of fundamental fairness to the defendant.

Defendant next contends that his sixth and fourteenth amendment rights to confrontation were violated at the transfer hearing. He points specifically to the police testimony wherein the officer related Baltimore's statements implicating defendant and cites *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. We do not believe that *Bruton* is apposite. That case concerned a codefendant's confession implicating the other at trial. As *Taylor* has made clear, the transfer hearing is not a trial of guilt or innocence and the procedural safeguards required at criminal trials are not mandated.

■ We find *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, more to the point. In that case the court held that *Bruton* did not require reversal when the defendant himself had confessed and his confession interlocked with the confession of the codefendant.

The record here shows that Baltimore implicated defendant in at least two interviews with the police and defendant corroborated Baltimore in his own statement after speaking with Baltimore. Baltimore's statement does not contradict defendant's. Nonetheless, defendant argues that he was intimidated by Baltimore. This is belied by the testimony of the police officer who stated that he was present when defendant and Baltimore were present together in the same room, and it did not appear to him that defendant was frightened or that Baltimore spoke to defendant in a threatening manner.

The argument is without merit.

■ As his fourth issue defendant claims that mandatory life imprisonment imposed on a 14-year-old violates the due process clause of the Illinois Constitution. (Ill. Const. 1970, art. I, sec. 2.) His argument proceeds on the theory that the natural-life-imprisonment provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) were intended to apply to adults who were eligible for the death penalty but for whom that penalty was neither sought nor imposed.

The thesis is adequately answered by a pair of recent cases: *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, and *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 480 N.E.2d 1147, *appeal denied* (1985), 108 Ill. 2d 26.

In *Taylor* the supreme court affirmed the circuit court's imposition of natural-life imprisonment on a 16-year-old and held that the mandatory natural-life imprisonment provisions of the statute violated neither the separation of powers doctrine nor the objective of restoring offenders to useful citizenship.

The *Rodriguez* court, relying on *Taylor*, found that the 15-year-old defendant was properly sentenced to natural-life imprisonment. The court rejected the defendant's argument that the natural-life sentence contradicted the express intent of the legislature exempting minors from the death penalty and cited *Woodson v. North Carolina* (1976), 428 U.S. 280, 305, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991, for the proposition that "the penalty of death is qualitatively different from a sentence of imprisonment, however long."

In *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300, the supreme court had occasion to comment on the due process

clause in the context of criminal statutes and required only "that the penalty prescribed for the particular crime be ' "reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." ' (*People v. Bradley* (1980), 79 Ill. 2d 410, 417.)" (105 Ill. 2d 310, 319, 473 N.E.2d 1300, 1305.) It seems apparent to us that a multiple murder is a very real threat and it makes no difference whether the offense is committed by an adult or a juvenile. If the legislature had intended that such an offense is of a lesser heinous quality when committed by a juvenile, it could have so stated and tailored the punishment accordingly. It did not.

The burden is on the one claiming unconstitutionality to establish it. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Defendant here has presented nothing new. The statute has been upheld in both *Taylor* and *Rodriguez*.

■ Defendant's final issue is that mandatory natural-life imprisonment violates the eighth and fourteenth amendments to the United States Constitution. He predicates the argument on the fact that no provision is made for consideration of evidence in mitigation as is required in death penalty cases.

It is true that the Supreme Court has held that a trial court must be allowed to consider mitigating factors which would prevent the imposition of the death penalty. (*Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978, 2991.) It has also held that age is a major mitigating factor in those cases. (*Eddings v. Oklahoma* (1982), 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869.) Defendant argues that if such consideration is mandated in death penalty cases, it must also be mandated in natural-life-imprisonment-without-parole cases. He maintains that natural-life imprisonment has the same permanent effect of isolation and deterrence as does the death penalty.

The answer to the argument is found in *Woodson* that the death penalty is qualitatively different from natural-life imprisonment. Moreover, in *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133, the Supreme Court found the death penalty cases to be of limited assistance in deciding the constitutionality of life sentences. In *Taylor* and *Rodriguez* those courts also found no analogy between death and life imprisonment cases.

Unquestionably, as was stated in *Taylor*, in the interest of public safety there must be a mandatory sentence of natural-life imprisonment for multiple murders.

It is not beyond comprehension that a fuller investigation might

have been made prior to the transfer hearing, but in the light of *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we cannot say that it was inadequate. Undoubtedly the transfer hearing and its result are at the heart of this case.

For all the foregoing reasons, the sentence of the circuit court of Macon County is affirmed.

Affirmed.

SPITZ, J., concurs.

JUSTICE GREEN, concurring in part and dissenting in part:

As indicated by the majority, my concern in this appeal centers upon the transfer hearing and the impact which section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) should have had on the decision made there. As mentioned, in *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, and *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 480 N.E.2d 1147, *appeal denied* (1985), 108 Ill. 2d 26, this legislation has been held to meet constitutional muster when applied respectively to 16- and 15-year-old juveniles convicted of double murder. However, in those cases, section 2—7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(a)) required that the juveniles be prosecuted criminally for those murder offenses because the juveniles had passed their 15th birthdays at the time of the offenses.

Here, defendant was only 14 years old at the time of the murders. No case has been called to our attention passing upon the application of the severe terms of section 5—8—1(a)(1)(c) where the juvenile is only 14 years of age and criminal prosecution can be taken only after a so-called "transfer" hearing under section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)). At such a hearing, unlike any other proceeding upon which criminal prosecution is preconditioned, the court must consider the best interests of the prospective defendant.

The imposition of a sentence of lifetime imprisonment on a 14-year-old juvenile is an extraordinary matter which requires careful consideration on review. Particularly is this true when the sentence was ultimately imposed by a judge whose discretion in sentencing had been taken away by the terms of section 5—8—1(a)(1)(c). In this case, the sentencing judge could not consider the young age of the defendant. He could not consider that although the evidence indicated defendant's conduct in the murder of Effie Curfman was vi-

cious and most egregious, his responsibility in the murder of Prentice Curfman appeared to be that imposed by the felony murder rule and, in any event, arose, at most, through accountability. The sentencing judge, who had conducted the trial and heard the witnesses, was not permitted to make his own determination as to the extent that the defendant was coerced or, at least, influenced by Rodney Baltimore, a vicious convicted felon who was a fugitive and was five years older than defendant. In ordinary sentencing hearings, and when the death penalty (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)), the imposition of a term of natural-life imprisonment for murder accompanied by aggravating circumstances (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b)), or the imposition of an extended-term sentence (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2) are being considered, these factors could be considered.

While the previously mentioned legislation preempted the sentencing decision, the decision made at the transfer hearing was not preempted. I conclude that we must examine that decision closely. I recognize that we are doing so with the benefit of hindsight. In this posture, I conclude that certain significant matters were overlooked by all parties at that hearing. These are things that any of us might overlook. Without intending criticism of any person taking part in that hearing and recognizing that in most cases waiver would prevent consideration of these matters on review, I conclude that factors that were overlooked require that we grant some relief to the defendant.

First, unlike the majority, I determine from the record that neither court nor counsel realized at the time of the transfer hearing that section 5—8—1(a)(1)(c) mandated the imposition of a life sentence if defendant was found guilty of both murders. Secondly, the record indicates that no thought was given to the possibility of permitting defendant to be prosecuted for all of the offenses charged except the murder of Prentice Curfman, thus enabling the State to accomplish its stated purpose of retaining control of defendant well beyond his 21st birthday but saving him from exposure to the mandatory requirements of section 5—8—1(a)(1)(c). Finally, even if those matters were considered, I conclude that, under all the circumstances, it was a breach of discretion to subject defendant to the rigors of section 5—8—1(a)(1)(c). Accordingly, I would vacate the life sentence, reverse the conviction for the murder of Prentice Curfman, and affirm all other judgments. I would then remand for sentencing for the murder of Effie Curfman.

In the seminal case of *Kent v. United States* (1966), 383 U.S.

541, 16 L. Ed. 2d 84, 86 S. Ct. 1045, the United States Supreme Court explained that the possibility of a minor being subject to severe punishment is one of the reasons why a full hearing is necessary before permitting criminal prosecution of a minor. For this reason alone, it is unlikely that the strict provisions of section 5—8—1(a)(1)(c) would have been considered at the transfer hearing and not mentioned when other important factors were discussed. However, my conclusion that the mandatory-life-sentence provision was not considered is based on much more.

The majority notes that both the judge holding the transfer hearing and the probation officer who testified spoke of the introduction of criminal proceedings which would permit retention of control over the minor until after he passes his 21st birthday as being not only in the best interests of the people but also in the best interests of the *juvenile*. How the best interests of the juvenile would be served by subjecting him to exposure to a mandatory sentence of life imprisonment is hard to fathom. The obvious answer is that the requirement for the mandatory term of life imprisonment is rather obscure and one that anyone of us could overlook if it was not called to our attention. Clearly that is what happened here.

The same thing happened later in the proceedings when defendant entered a plea of guilty to both murder charges. Subsequently, the State confessed error because another sitting judge who accepted the pleas had not admonished the defendant as to the mandatory life sentence. Clearly, defense counsel had not thought of this before or he would not have permitted defendant to enter pleas which would mandate the most severe punishment possible. The State would have been unlikely to participate in the acceptance of pleas that would surely be set aside if it had been aware of the mandated sentence. The fact that everyone overlooked the existence of the special sentencing provision illustrates its obscure nature.

The court has substantial discretion in ruling at a transfer hearing. (*People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366 (to be distinguished from *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, which upheld the constitutionality of section 5—8—1(a)(1)(c)).) However, a lack of knowledge of or consideration for the severity of the punishment to which a juvenile will be exposed upon criminal prosecution is too serious a matter to be disregarded. I cannot presume from this record that the matter was considered, but rather conclude, as a matter of law, that it was not. This alone requires some relief.

We could remand the case to the trial court for a new transfer

hearing with directions to that court to then certify its decision to us. Upon receipt of the decision we could enter such judgment as would then be required. This would be awkward because of the after-the-fact nature of the transfer hearing. I need not answer how the matter should be handled because I would hold that relief is required even if section 5—8—1(a)(1)(c) was properly considered.

The record does not give any indication that consideration was given to the possibility of permitting criminal prosecution of some but not all of the charges. Section 2—7(3)(b) of the Juvenile Court Act indicates that this may be done because it states that when criminal proceedings are undertaken, "the [juvenile] petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned." (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)(b).) The majority states that it would be awkward and unworkable to permit a partial prosecution. My answer is that such is not the case where, as here, the conflicting interests of the juvenile and the public can best be served thereby.

We must consider that because the juvenile was only 14 years old at the time of the offenses, despite the outrageous and savage nature of the acts the jury found that he committed, the legislature has provided that *his best interests* must be given *some consideration*. The focus at the transfer hearing was on the grounds for charging defendant under the criminal law and the need to retain control of him beyond the time limits of the Juvenile Court Act. The court wisely recognized that the latter was necessary. To have turned defendant loose when he reached the age of 21 would have discharged a person who would still be likely to be dangerous and would have deprecated the seriousness of his vicious conduct. No evidence indicated and no statement was made that the public interest required that defendant be incarcerated for the rest of his life. Under these circumstances and further considering the juvenile's age, the indications that his participation in the murder of Prentice Curfman was indirect and the possible influence on his activities by Rodney Baltimore, I would hold that the court was required to give sufficient weight to the juvenile's best interests to prohibit prosecution for both murders as that would expose him to the mandatory-natural-life imprisonment provision.

The majority asserts that a judge holding a transfer hearing cannot anticipate which offenses may result in convictions and that allowing prosecution for only some of the offenses charged in the juvenile petition would unduly limit the prosecution. I recognize the problem but would hold that each case must be considered separately

in this respect. Here the problem would be minor at most. The information available at the transfer hearing indicated that a conviction of the juvenile for the murder of Prentice Curfman, while he was acquitted of the murder of Effie Curfman, was extremely unlikely. The murder charge against Prentice Curfman was the one to refuse. The tactical advantage to the prosecution in being able to present multiple charges must be recognized. However, it is an advantage that must be sacrificed at times if the best interests of 14-year-olds are to be considered in determining the extent to which they may be prosecuted on criminal charges.

The majority also considers the fact that the juvenile's guilt of the murder of Prentice Curfman did not arise from his direct act of killing Curfman is not of significance. They are correct in stating that the defendant is not relieved thereby of criminal responsibility for the murder. However, the indirect nature of the conduct of the defendant is a matter which is usually considered in mitigation and would appear to be the type of matter which is of substantial importance in determining the extent of prosecution to be permitted.

I conclude this overlong dissent as I began by repeating my concern with the imposition of a mandatory life sentence on a 14-year-old. I doubt very much if, when the legislature enacted section 5—8—1(a)(1)(c), it envisioned its mandatory operation against a 14-year-old. By the express terms of the legislation, if defendant had merely held a ladder for Baltimore with the intent to aid him in committing a burglary of the premises and Baltimore murdered both Curfmans, defendant would have been guilty of two felony murders and, if prosecuted criminally, subject to a mandatory life sentence. On this record, the discretion required to be exercised at the transfer hearing should have prevented the mandatory-life-sentencing provision from coming into play. We should not affirm the mandatory life sentence. I propose what I consider to be the fairest possible disposition under the circumstances.