THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY CLARK, Defendant-Appellant.

Fourth District   No. 4—88—0610

Opinion filed September 7, 1989.

McCULLOUGH, P.J., specially concurring.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Defendant Gary Clark has appealed judgments of the circuit court of Macon County entered on jury verdicts finding him guilty of two murders, two robberies, home invasion, and aggravated criminal sexual assault and sentencing him on July 21, 1988, to terms of imprisonment for natural life, 4 years, 4 years, 15 years, and 7 years, respectively. The sentences for a definite term of years were ordered to run concurrently with the sentence for natural life and with each other. This appeal comes after the third trial of the case, and after it has been before this court and the supreme court on a prior occasion. For details beyond the summary we present here, we refer readers to *People v. Clark* (1987), 119 Ill. 2d 1, 518 N.E.2d 138, and *People v. Clark* (1986), 144 Ill. App. 3d 420, 494 N.E.2d 551.

This litigation began in July 1984, when a petition was filed in the circuit court of Macon County alleging defendant, then 14 years old, was a delinquent minor because of the commission of felony murders of E.C. and P.C. on July 14, 1984. Upon motion of the State, pursuant to section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)), and after a hearing, the circuit court permitted the State to proceed against defendant under the provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 1—1 *et seq.*). The State then charged defendant with the offenses with which he now stands convicted. At a first trial, the defendant was convicted of robbery and residential burglary but the jury was unable to agree on other charges and was dismissed. A second trial was held in Tazewell County, where the defendant was convicted and given the same sentences as here.

The first appeal was from the convictions imposed after the trial

in Tazewell County and the sentences then imposed. The issues on that appeal centered upon the propriety of permitting the minor to be tried under the Criminal Code of 1961. However, the defendant also contended (1) the imposition of a natural life sentence on him for offenses committed when he was only 14 violated the due process provisions of the Illinois and Federal Constitutions and the eighth amendment; and (2) his confrontation rights were violated by the introduction of certain evidence. In a split decision, this court affirmed. The dissent focused on the severity of section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) as applied to the case of a 14-year-old against whom criminal prosecution was sought. That legislation mandates the imposition of a sentence for natural life upon the conviction of an accused of two murders. The dissent concluded the record conclusively showed that the circuit court, when permitting the criminal prosecution, was unaware of that mandatory requirement.

After granting leave to appeal, the supreme court reversed and remanded, directing the procedure begin with a new hearing in the juvenile proceeding, to determine whether criminal prosecution was proper. That court unanimously agreed that the prior juvenile proceeding was flawed, because neither court nor counsel had been aware of the mandatory requirement of section 5—8—1(a)(1)(c) of the Unified Code of Corrections. The majority of that court also held the hearing to determine whether criminal prosecution should be permitted was flawed because insufficient evidence was presented as to the personal and social history of the defendant and as to whether facilities were available to treat him if he remained subject to the Juvenile Court Act. See Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).

On remand, the circuit court, after holding a hearing, again authorized the criminal prosecution of defendant. New informations were filed. A jury trial was again held, this time in McLean County. Defendant was convicted and sentenced, as previously described, and the instant appeal was taken. Defendant again maintains the circuit court abused its discretion in allowing criminal prosecution and asserts his constitutional rights were violated by imposition of the natural life sentence. He also asserts the circuit court erred (1) in denying his motion to suppress statements he gave to police; and (2) in allowing two witnesses to testify to statements he made while in juvenile detention. We hold that no error occurred and affirm.

On remand, both at the hearing to determine whether criminal prosecution should be allowed and at trial, evidence was presented indicating (1) in the early morning hours of July 14, 1984, a Decatur po-

lice officer noted a possible break-in at the home of P.C. and E.C., both octogenerians, in Decatur; (2) upon entering that house, that officer found the brutally beaten corpse of E.C. and an equally brutally beaten and nearly dead P.C. on the floor in separate rooms; (3) P.C. died soon thereafter; (4) an ear of sweet corn had been forced into E.C.'s vagina; (5) defendant had admitted to several people that he and Rodney Baltimore had entered the victims' home to burglarize it and when defendant came upon E.C., he beat her, jumping on her chest and breaking her sternum; and (6) Baltimore then beat P.C.

At the latest hearing concerning whether criminal prosecution should be permitted, the evidence concerning the defendant's personal and social history was extensive and thorough. Testimony was presented that police had five contacts with defendant prior to present charges and three of those had resulted merely in station adjustments. Dale Sunderland, a psychiatrist, testified he had interviewed defendant and diagnosed defendant as having an antisocial personality with some paranoia. He described such a person as one unlikely to learn from experience to such an extent it would change his behavior. Dr. Sunderland stated an opinion that no local facilities were available that could rehabilitate defendant but that if defendant could stay two or three years in a secure structured institution adequately staffed, defendant might be rehabilitated. Stephen Courtois, a psychologist, testified he had examined and tested defendant and found him (1) "very intelligent"; but (2) "very explosive" at times and "quite angry and violent"; and (3) unlikely to be rehabilitated except that after age 40, he might lose his aggressiveness and become rehabilitated.

Defendant places his greatest emphasis upon his contention that the circuit court abused its discretion in ruling on the State's request for leave to prosecute him under the Criminal Code of 1961. In the face of the stronger evidence on remand, defendant does not contend that permitting the criminal prosecution was error. Rather, he asserts the court should not have permitted the State to prosecute him for both murders but only for the murder of E.C., in regard to which the evidence indicated he performed the acts which brought about the death. Had this ruling been made, he would not have been subject to a mandatory natural life sentence and, in sentencing, the court would have had discretion in imposing sentence to consider whatever mitigating evidence he could produce including that which showed he was only 14 years old at the time of the offenses.

■■ Section 5—4(3)(a) of the Juvenile Court Act of 1987, which was in force at the time of the latest hearing concerning whether criminal prosecution was authorized, requires the court, in rendering

its decision, to consider, among other matters, the following factors:

"(1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)(a).

In its opinion in *Clark*, the supreme court described the decision of whether to allow criminal prosecution as one where the circuit court "must weigh relevant statutory and nonstatutory factors in striking the balance for society by [permitting criminal prosecution of] the alleged juvenile offender or in striking the balance for the juvenile by [continuing to proceed under the Juvenile Court Act]." (*Clark*, 119 Ill. 2d at 14, 518 N.E.2d at 144.) Citation was made to *People v. M.D.* (1984), 101 Ill. 2d 73, 461 N.E.2d 367, and *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366. Defendant maintains the only way the circuit court could have properly balanced the need to impose substantial incarceration upon defendant against his young age and the fact that his accountability for the murder of P.C. was only vicarious was to allow only the limited prosecution he suggests. He points out that the judge presiding at the proceedings where prosecution was authorized stated he "might" consider only partial prosecution but concluded he had no authority to do so. Thus, defendant asserts, the court proceeded under a misunderstanding of the law.

The theory of allowing only partial prosecution of the alleged offenses occurring in the single transaction stemming from the burglary of the victims' residence was set forth in the dissent when this case was previously before this court. (*Clark*, 144 Ill. App. 3d at 435-36, 494 N.E.2d at 561-62.) The supreme court made no direct reference to this theory in its opinion but did speak in some detail of the matters which should be considered on remand. Moreover, in describing the seriousness of the decision as to whether to permit prosecution which could result in the "harsh" penalty of a mandatory natural life sentence, that court stated:

"Nonetheless, where, *as here*, the choice is *between two extremes*, incarceration to age 21 under the [Juvenile Court] Act or *incarceration for life without possibility of parole under the*

*Criminal Code,* adequate balancing calls for *consideration of which penalty* would best serve both of the interests at stake." (Emphasis added.) (*Clark,* 119 Ill. 2d at 15, 518 N.E.2d at 144.) Thus, the supreme court indicated the circuit court could only allow criminal prosecution for both murders or limit the procedure against the defendant to those under the Juvenile Court Act.

■ In *Clark,* the supreme court rejected the theory of this court's dissent that the circuit court had power to order only partial prosecution of crimes arising from the same transaction. Were it not for the precedential effect of that decision, this panel would not be in agreement on that issue. However, under the prevailing circumstances, no useful purpose would be served by encumbering our decision here with the detailed reasoning of the various panel members. We hold that no error occurred in the decision to allow full prosecution.

We need not discuss at length defendant's contention that imposition of a mandatory natural life sentence violated his Federal and State constitutional rights. Defendant raised this issue before this court in his prior appeal. This court rejected that argument in defendant's prior appeal. We relied principally upon *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300, *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, and *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 480 N.E.2d 1147.

■ In *Steppan,* the supreme court stated that in regard to penalties, due process requires only that the penalties be designed to remedy the evils which the legislature deemed to threaten the public. In *Taylor,* the court held that imposition of a mandatory natural life sentence upon a 16-year-old was consistent with constitutional provisions of this State. In *Rodriguez,* the court held that imposition of such a sentence on a 16-year-old violated neither the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2), the separation of powers provision of that constitution (Ill. Const. 1970, art. II, §1), the objective of restoring the offender to useful citizenship (Ill. Const. 1970, art. I, §11), nor the cruel and unusual punishment provision of the eighth amendment to the Federal Constitution (U.S. Const., amend. VIII).

■ When the supreme court granted leave to appeal from our prior decision, that court refused to consider the defendant's argument in regard to the foregoing constitutional issues. The supreme court held the defendant had waived those issues by failing to raise them in his petition for leave to appeal. (107 Ill. 2d R. 315(b)(3).) Defendant requests that this court now give reconsideration to our

previous holding. We find nothing that has happened in the interim to convince us to do so. We are aware of the recent holding of the United States Supreme Court in *Thompson v. Oklahoma* (1988), 487 U.S. 815, 101 L. Ed. 2d 702, 108 S. Ct. 2687, holding that subjecting a 15-year-old accused to the Oklahoma death penalty constituted cruel and unusual punishment. However, as this court pointed out when this case was previously before us, the cases of *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133, and *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978, taken together indicate the significant differences between the death penalty and a sentence of natural life imprisonment are such that the constitutional propriety of natural life sentences cannot be measured by the constitutional requirements for the death penalty. Moreover, as the State points out here, the *Thompson* Court relied upon history and statistical data concerning the impact of the death penalty on minors. Here, no such information is available in regard to natural life sentences imposed upon minors.

■ As a further issue related to the constitutionality of legislative provisions for mandatory natural life sentences, defendant contends the trial court misconstrued the position of the supreme court in its decision in *Clark*. Defendant maintains this occurred when the trial court was ruling on defendant's pretrial motion to declare the legislation concerning mandatory natural life sentences unconstitutional. The question before the trial court at that time was one of law, and the propriety of any ruling made by the trial court in that respect was not prejudicial to defendant in view of our determination upholding the constitutionality of that legislation.

Defendant's contention that the court erred in denying his motion to suppress statements he gave to police concerns statements defendant made on the date of his arrest and while in custody to Decatur police detective Dennis Harris and Decatur police officer Mark Barthelemy. He maintains the statements were involuntary. The testimony at the hearing on that motion to suppress was somewhat disputed. Nevertheless, evidence was presented that (1) while defendant was only 14 years old at the time, he had previous contact with police and was of average intelligence; (2) defendant was advised he could be tried as an adult; (3) defendant was not questioned continuously; and (4) defendant never asked for an attorney or that the conversation be terminated. No evidence was presented that defendant was threatened by the police or that he complained about the treatment he was receiving.

The evidence is undisputed that defendant's mother was allowed

to be present during the first interview until she left at her own request.

Contention is made that at a prior meeting between defendant and his codefendant, Rodney Baltimore, the latter had coerced defendant to make statements to the police which were not voluntary. Baltimore was a tough, convicted felon, who was five years older than defendant but no direct evidence was presented that he intimidated defendant into making the foregoing statements to the police.

■■■ While the State had the burden of proving by a preponderance of the evidence that any confessions or admissions of guilt by defendant were voluntary, this court may not overturn the trial court's ruling on the suppression issue unless it is contrary to the manifest weight of the evidence. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) The police were not obligated to advise defendant of the nature of the charges to be brought against him, the possible punishment for those charges, or all of the material facts known to them before interrogating defendant. (*People v. Prude* (1977), 66 Ill. 2d 470, 475-76, 363 N.E.2d 371, 373.) We hold that the circuit court did not err in denying defendant's motion to suppress the statements given to the police officers.

Defendant's final contention, that the trial court erred in admitting testimony of two witnesses as to statements defendant made while in juvenile custody, arose from the testimony at trial of Teresa Macklin and Janet Myers. Neither had testified at any of the previous trials. Both were matrons at the Macon County Juvenile Detention Center shortly after the offenses involved here and while defendant was detained there. Defendant contends these alleged statements did not connect him to the transaction of the burglary and murder and that the testimony of these witnesses was incredible.

Macklin testified, over objection, she was employed on the third shift at the center in the summer of 1984. She stated that at a time when defendant was in a single person cell, she heard him talking to boys in another cell. According to Macklin defendant said "we or he f----- her." Macklin stated she could not remember whether defendant stated that "we" or "he" were the person or persons who did that. Macklin also stated she could not remember who the "her" was. Macklin further testified she heard defendant say that he had "stuck a corncob up her vagina" and that this episode was "the best sex he had ever had." However, a correction center log which Macklin identified as having been prepared by herself and other matrons was also introduced into evidence. This document indicated defendant had never been in a cell by himself during the time he was held at the de-

tention center.

Janet Myers testified that one Saturday in the summer of 1984 while she was working at the detention center, she overheard a conversation between defendant and two others who were in the same cell. She said they were discussing their previous sexual experiences and that defendant stated "the best sex he ever had was with a dead woman." Myers stated she could not remember having told Officer Richard Hazen that defendant had spoken of having sex with an "older" woman rather than a "dead" woman. Myers was impeached by (1) detention center logs which indicated that defendant and the other persons allegedly present in a cell had not shared a cell on a Saturday during that period of time; and (2) by the testimony of Hazen that a report he wrote indicated Myers had used the adjective "older" rather than "dead" in describing the woman about whom the defendant was speaking.

■ No error occurred in the admission of this evidence. The admissions were connected to the murder because E.C. was shown to be an 86-year-old woman at the time of the offenses and evidence was presented that her body was found with a corncob inserted in her vagina. Strong evidence indicated defendant had jumped on her chest and killed her. Because of this connection, any vagueness in this testimony went to the weight to be given to the evidence rather than to its admissibility. (*People v. Houseton* (1986), 141 Ill. App. 3d 987, 490 N.E.2d 1354; *People v. Olbrot* (1982), 106 Ill. App. 3d 367, 435 N.E.2d 1242.) Similarly, the fact these witnesses were impeached also went to the weight to be given to their testimony and not to its admissibility. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.1, at 317 (4th ed. 1984); *Brown v. Luehrs* (1877), 1 Ill. App. 74, *aff'd* (1880), 95 Ill. 195.

As we have indicated, we affirm all judgments from which appeal is taken.

Affirmed.

LUND, J., concurs.

PRESIDING JUSTICE McCULLOUGH, specially concurring:
The trial court did not err in transferring all of the charges from the juvenile court with respect to the defendant. Section 5—4(6)(b) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 805—4(6)(b)) states that all charges "arising out of the same incident" should be kept together and tried at the same time. Subsection (b) re-

fers to subparagraph (a) dealing with minors of the age 15 years or older but refers only to the "charges" mentioned in subparagraph (a). Similar language is found in sections 5—4(7)(a) and (b) (Ill. Rev. Stat. 1987, ch. 37, pars. 805—4(7)(a), (7)(b)).

Even if it is argued that section 5—4(6)(b) does not apply, it does provide guidance as to how these matters concerning multiple charges should be handled in the trial court. As stated above, section 5—4(6)(b) talks about "charges" specified in paragraph (a) and not "age of child."